[Cite as *State v. Morales*, 2018-Ohio-3687.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                          :

      Plaintiff-Appellee,              :

                                    No. 17AP-807

v.                                      :        (C.P.C. No. 16CR-4991)

Luis A. Morales, Jr.,                   :        (REGULAR CALENDAR)

      Defendant-Appellant.             :

D E C I S I O N

Rendered on September 13, 2018

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *Yeura R. Venters*, Public Defender, and *Robert D. Essex*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Luis A. Morales, Jr., appeals from the judgment entry of the Franklin County Court of Common Pleas finding appellant guilty of possession of marijuana following appellant's no contest plea. For the following reasons, we affirm the decision of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On April 27, 2016, Detective Lowell Smittle of the Columbus Division of Police applied for a search warrant requesting a search be authorized at 643 Belvidere Avenue "and the curtilage" thereof in Columbus, Ohio. (Aff. in Support of Warrant to

Search at 2; Search Warrant at 1.)  The affidavit in support of the warrant to search provided by Smittle states:

> In January 2016, Detective Smittle received information pertaining to a Tera Igel Hughes and Jordan Cook who were selling illegal drugs such as crack cocaine and heroin out of the residence located at 643 Belvidere Ave.
>
> From January 28th and April 1st 2016, Detective Smittle conducted stationary and mobile surveillance at 643 Belvidere Ave. and observed several vehicles registered to Tera Igel Hughes, parked out front of the location. Detective Smittle observed Jordan Cook driving vehicles registered to Sarah Igel Hughes in the area on multiple occasions. Detective Smittle also observed Tera Igel Hughes and Jordan Cook in the back yard of the residence coming and going from 643 Belvidere Ave. on several occasions.
>
> During the week of March 13th 2016, utilizing a confidential informant, Detectives made a controlled purchase of crack cocaine from 643 Belvidere Ave., Columbus, Ohio 43223. Undercover officers personally met with informant prior to the buy. The source knows what crack cocaine looks like, how it is packaged and has used it in the past.  The C/I was searched and found not to have any contraband or money on his/her person; was given a specific amount of city funds with which to purchase the narcotics; proceeded to 643 Belvidere Ave. The C/I returned directly to the undercover officers, detective's maintained constant surveillance of the C/I.  The C/I gave them an amount of illegal contraband which he/she had purchased from the premises.   The informant was searched and no contraband or money was found on his/her person. After the narcotics were recovered they were field tested "Positive" and transported to the Columbus Police Property Room and held as evidence.
>
> During the week of March 27th 2016, utilizing a confidential informant, Detectives made a controlled purchase of crack cocaine from 643 Belvidere Ave., Columbus, Ohio 43223. Undercover officers personally met with informant prior to the buy. The source knows what tar heroin looks like, how it is packaged and has used it in the past.  The C/I was searched and found not to have any contraband or money on his/her person; was given a specific amount of city funds with which to purchase the  narcotics; proceeded to 643  Belvidere Ave.  The C/I returned directly to the undercover officers, detective's

> maintained constant surveillance of the C/I. The C/I gave them an amount of illegal contraband which he/she had purchased from the premises. The informant was searched and no contraband or money was found on his/her person. After the narcotics were recovered they were field tested "Positive" and transported to the Columbus Police Property Room and held as evidence.
>
> Per the statutory requirements of section 2933.231 of the Ohio Revised Code, Detective Lowell T. Smittle #1776 of the Columbus Division of Police has verified that 643 Belvidere Ave. Columbus, Ohio 43223, is the correct address in relation to the criminal offense underlying the request for the issuance of the search warrant.
>
> Detective Smittle has good cause to believe and does believe that. Trafficking in Drugs, 2925.03 O.R.C, Possession of Drugs, 2925.11 of the O.R.C., Drug Paraphernalia Offenses, 2925.14 of the O.R.C, are currently being violated at, 643 Belvidere Ave., Columbus, Ohio 43205, in Franklin County and requests permission to search said premise, occupants known or unknown and curtilage.
>
> Based on the above-described facts, the Affiant requests that the statutory preconditions for non-consensual entry be waived (no knock) for the following location: 643 Belvidere Ave. Columbus, Ohio 43223, and the curtilage thereof.

(Sic passim.) (Aff. in Support of Warrant to Search at 1-2.) The search warrant, which was signed by a municipal court judge that same day at 11:35 a.m., states that Smittle, having been duly sworn, says that he has good cause to believe and does believe that:

> Evidence of the crimes of: Trafficking in Drugs, 2925.03 O.R.C., Possession of Drugs, 2925.11 O.R.C., Drug Paraphernalia Offenses, 2925.14 O.R.C., Illegally obtained prescription medication, or any other controlled substance or drug of abuse, as defined in § 3719.41 R.C.; other evidence of illicit drug trafficking, to search for and collect all cash, weapons, documents and any other fruits and instrumentalities and evidence of the crimes unknown at this time; and authority to search any persons at such premises or curtilage.

(Search Warrant at 1.)

{¶ 3}    The warrant was executed two days later on April 29, 2016 at 11:55 a.m. by the Columbus Division of Police.  According to the sworn inventory of property taken on the warrant, property taken from the garage of the residence attributable to appellant and another suspect included: 29 marijuana plants; 29 planting pots; a grow tent; multiple types of grow lights; filters; drying racks; an "electronic ballast device"; ceramic heater; an "xtreme nano"; a "fan blower"; an open bag of plugs; a "BlueLab PH pen"; 12 bottles of grow chemicals; and 2 plastic tubs.  (Evidence Inventory at 1-2.)  This property was seized and submitted for testing.

{¶ 4}    On September 9, 2016, a grand jury indicted appellant on one count of possession of marijuana, in violation of R.C. 2925.11, a fifth-degree felony, for knowingly obtaining, possessing, or using marijuana in an amount equal or exceeding 200 grams but less than 1,000 grams on or about April 29, 2016.  Appellant entered a plea of not guilty at arraignment.

{¶ 5}    On April 14, 2017, appellant moved to suppress and exclude from trial the evidence found during the search.  Appellant argued the information on which the affidavit was obtained was stale and insufficient, and, therefore, the seizure violated the Fourth and Fourteenth Amendments of the U.S. Constitution and Section 14 of the Ohio Constitution .  Appellant additionally argued that plaintiff-appellee, State of Ohio, could not take advantage of the good-faith exception.  In its memorandum contra appellant's motion to dismiss, appellee argued that the information in the warrant affidavit provided a substantial basis for the trial court judge's conclusion that there was a fair probability that contraband or evidence of a crime would be found in appellant's home.  Alternatively, appellee argued the good-faith exception to the exclusionary rule applied.

{¶ 6}    A hearing on the motion to suppress was held on July 19, 2017.  The parties stipulated to admission of a certified copy of the search warrant, supporting affidavit, and subsequent documentation of property seized.  No witnesses were called, and the trial court heard arguments from the parties.  Appellant asserted the affidavit supporting the warrant was "stale" in that, based on the information provided in the affidavit, there was not a fair probability that drugs would still be on the premises.  (July 19, 2017 Tr. at 26.)  Appellant additionally challenged the reliability and basis of knowledge of the confidential informant and the lack of more specific dates cited in the affidavit.  Appellant agreed that under the

standard of review, "[i]f it's legitimately a close call, then you probably need to give deference to the municipal court [judge]." (July 19, 2017 Tr. at 43.) Appellee argued the affidavit described drug trafficking from the residence at issue, the nature of drug trafficking is that of an ongoing operation, and that case law relevant to warrant issued based on suspected drug trafficking support the time frame of issuance of the warrant in this case. Appellee also argued that the good-faith exception to the exclusionary rule would apply in this case.

{¶ 7} On August 17, 2017, the trial court denied the motion to suppress. According to the trial court, the only real issue in the case is the staleness issue, and case law on this topic is "all over the place." (August 17, 2017 Tr. at 54.) To the trial court, although the affidavit was "disturbingly vague," he would deny the motion because "in looking at the totality of the circumstances and the fact that the case law instructs that in a close call, the warrant and the affidavit is to be upheld." (August 17, 2017 Tr. at 54.)

{¶ 8} A plea and sentencing hearing was held on October 23, 2017. After being advised of his rights, pursuant to Crim.R. 11, appellant, represented by counsel, entered a no contest plea of guilty to possession of marijuana. According to the facts recited at the plea and sentencing hearing, which appellant did not take any exception to for purposes of the plea, appellant "was one of the people who was inside the house at the time" of the raid, was interviewed regarding the raid after being read his constitutional rights, and "did admit to owning, possessing and maintaining the large marijuana grow operation that was recovered inside the unattached garage at 463 Belvidere Avenue" but claimed he did not sell the drugs but only used the drugs. (Oct. 23, 2017 Tr. at 4.) Furthermore, the plants recovered were found to be 477.2 grams of marijuana.

{¶ 9} The trial court imposed a period of community control for three years, reserving a prison term of twelve months if appellant violates the terms of community control. No fines or court costs were imposed.

{¶ 10} Appellant filed a timely appeal to this court.

## II. ASSIGNMENT OF ERROR

{¶ 11} Appellant assigns the following as trial court error:

> The trial court erred in denying Defendant-Appellant's motion
> to suppress all evidence obtained from the search of 643
> Belvidere conducted on April 29, 2016 as the information

contained in the search warrant was stale and did not provide sufficient and timely information to establish probable cause.

## III.  STANDARD OF REVIEW

{¶ 12} The Supreme Court of Ohio articulated the general standard of review for a motion to suppress in *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372:

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.
>
> Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.)  *Id.* at ¶ 8-9.  *State v. Edwards*, 10th Dist. No. 12AP-992, 2013-Ohio-4342, ¶ 21.  Where the trial court did not make any findings of fact, we apply a de novo standard in determining whether the trial court properly denied appellant's motion to suppress.  *State v. Johnson*, 10th Dist. No. 13AP-637, 2014-Ohio-671, ¶ 6.

{¶ 13} In cases where the defendant's motion to dismiss challenges the sufficiency of probable cause in an affidavit submitted in support of a search warrant, neither the trial court (in its initial determination of whether to grant or deny a defendant's motion to dismiss) or an appellate court (in reviewing the trial court's decision on the defendant's motion) should substitute its own judgment regarding probable cause for that of the judge or magistrate who issued the search warrant.  *State v. Ingold*, 10th Dist. No. 07AP-648, 2008-Ohio-2303, ¶ 20, quoting *State v. George*, 45 Ohio St.3d 325 (1989), paragraph two of the syllabus (holding that reviewing courts should not conduct de novo review as to whether the affidavit contains sufficient probable cause to support a warrant).  Rather, "[i]n conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the [issuing judge's] determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant."  *Ingold* at ¶ 20; *George* at paragraph two of the

syllabus.  A court reviewing whether an affidavit submitted in support of a search warrant sufficiently established probable cause must simply ensure that the issuing judge had a "substantial basis" for concluding that probable cause existed.  *Ingold* at ¶ 20; *George* at paragraph two of the syllabus.

## IV.  LEGAL ANALYSIS

### A.  Appellant's Assignment of Error

{¶ 14} Under his assignment of error, appellant argues that the information presented to the judge was stale in that it was not sufficiently timely to allow the judge to make a determination that there was probable cause to believe drugs would still be on the premises.  For the following reasons, we disagree.

{¶ 15} The Fourth Amendment to the U.S. Constitution, as applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  This right is reflected in the Ohio Constitution, revised code, and criminal rules.  *See* Article I, Section 14 of the Ohio Constitution; R.C. 2933.22(A); Crim.R. 41(C).

{¶ 16} "A neutral and detached judge or magistrate may issue a search warrant only upon a finding of probable cause."  *State v. Young*, 146 Ohio App.3d 245, 253 (11th Dist.2001), citing *United States v. Leon*, 468 U.S. 897, 916 (1984).  The test for determining probable cause to issue a search warrant is whether, viewing all the circumstances set forth in the supporting affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  *Ingold* at ¶ 17-18, citing *George* at paragraph one of the syllabus.   This is a "practical, common-sense decision" that is not a prima facie demonstration of criminal activity.  *George* at paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *Ingold* at ¶ 19.

{¶ 17} Pursuant to the Fourth Amendment exclusionary rule, all evidence obtained by searches and seizures in violation of the U.S. Constitution is inadmissible in a state court. *Ingold* at ¶ 18; *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).  However, the good-faith exception to the exclusionary rule provides that the "exclusionary rule should not be applied so as to

bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *George* at paragraph three of the syllabus.

{¶ 18} In this appeal, appellant submits that the nearly one-month lag between the last investigative action indicated in the detective's affidavit and issuance of the warrant is "far too long" to create a fair probability that drugs or the targets of the investigation would be present at the residence on the date and time of the search given the perishable and easily transferable nature of the contraband sought and the absence of any intervening police work such as surveillance or controlled buys to provide recent corroboration. (Appellant's Brief at 14.) Appellant cites *State v. Jendrusik*, 7th Dist. No. 06-BE-06, 2006-Ohio-7062, ¶ 25, and several federal cases—*United States v. Brooks*, 594 F.3d 488, 493 (6th Cir.2010), quoting *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir.2009), and *United States v. Kennedy*, 427 F.3d 1136 (8th Cir.2005)—for the proposition that the perishability and easy transferability of drugs rendered the information in the instant affidavit stale. Appellant additionally argues that the good-faith exception to the exclusionary rule does not apply since, considering the lapse between the last work the detective performed on the case and the issuance of the warrant, the affidavit was so lacking in indicia of probable cause that a belief that drugs would still be on the premises was objectively unreasonable.

{¶ 19} Probable cause must exist at the time the application for a warrant is made. *Ingold* at ¶ 22; *State v. Shropshire*, 8th Dist. No. 103808, 2016-Ohio-7224, ¶ 25. "The more 'stale' the evidence becomes, the less likely it is to support probable cause." (Internal quotation omitted.) *State v. Ridgeway*, 4th Dist. No. 00CA19 (Nov. 21, 2001). "There is no arbitrary time limit that dictates when information [offered to support a search warrant application] becomes stale." *Ingold* at ¶ 20. Instead, "[t]he test for staleness is whether the alleged facts justify the conclusion that contraband is probably on the person or premises to be searched at the time the warrant issues." *Id. See also State v. Rieves*, 8th Dist. No. 105386, 2018-Ohio-955, ¶ 31 (internal quotation omitted) (stating information becomes stale when enough time has elapsed such that there is no longer sufficient basis to believe that the items to be seized are still on the premises).

{¶ 20} "The question of staleness is not measured solely by counting the days between the events listed in the affidavit and the application for warrant." *Ingold* at ¶ 23. "Ohio courts have identified a number of factors to consider in determining whether the information contained in an affidavit is stale, including the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident or ongoing criminal activity." *Id.*; *Brooks* at 493 (noting that whether information is stale depends on the inherent nature of the crime).

{¶ 21} An affidavit supporting a search warrant which, viewed in its totality, indicates investigation into an ongoing criminal operation, such as drug trafficking, may support the issuance of a search warrant even where the information provided in the affidavit is not recent. *United State v. Ortiz*, 143 F.3d 728, 733 (2d Cir.1998), quoting *United States v. Martino*, 664 F.2d 860, 867 (2d Cir.1981) ("[W]hen the supporting facts 'present a picture of continuing conduct or an ongoing activity, . . . the passage of time between the last described act and the presentation of the application becomes less significant."); *Ridgeway*, quoting *State v. McKenzie*, 6th Dist. No. E-97-040 (Sept. 18, 1998) (" '[A]n affidavit which establishes a pattern of conduct or indicates an ongoing investigation can justify the granting of a search warrant based on old information.' ").

{¶ 22} For example, information in an affidavit over one month old has been found to support probable cause to issue a search warrant where the affidavit describes ongoing criminal activity. *See, e.g., State v. Clouser*, 4th Dist. No. 16CA4, 2016-Ohio-5370, ¶ 16-17 (two and one-half months between last incidents of drug transactions and warrant application not stale and supported probable cause); *State v. Prater*, 12th Dist. No. CA2001-12-114, 2002-Ohio-4487, ¶ 10-14 (six months between last incidents of drug transactions and warrant application not stale and supported probable cause).

{¶ 23} In this case, the affidavit in support of the search warrant states that in January 2016, Smittle first received information pertaining to Hughes and Cook selling illegal drugs, such as crack cocaine and heroin, out of the Belvidere residence. From January 28 to April 1, 2016, Smittle conducted stationary and mobile surveillance of the residence and was able to identify Hughes and Cook at that residence. A confidential

informant made two controlled buys from the residence during the weeks of March 13 and March 27, 2016.

{¶ 24} Appellant has not demonstrated that the approximate one-month span between the drug activity stated in the affidavit and the application for the search warrant (April 27, 2016) demands reversal on the facts of this case. App.R. 16(A)(7); *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal). The cases cited by appellant acknowledge the distinction, in gauging staleness as it relates to probable cause, between warrants issued based on affidavits describing single incidents of crimes and affidavits describing ongoing criminal activity and investigations. *See*, *e.g.*, *Jendrusik* (finding trial court erred in denying motion to suppress where information in supporting affidavit consisted of one "isolated incident" of a controlled drug buy, the affidavit was filed 43 days after the controlled drug buy occurred, and there was no information pointing to an ongoing drug business operation or ongoing investigation); *Frechette* (internal citations omitted) (noting that information regarding "mobile, easily concealed, readily consumable" narcotics "could quickly go stale in the absence of information indicating an ongoing and continuing narcotics operation"); *Kennedy* at 1142 (distinguishing a tip that a man stopped by police was a drug dealer and had drugs hidden in his car from federal cases that found information in the affidavit occurring three months, one month, and two and one-half weeks prior to the warrant application to not be stale where the affidavit information indicated an ongoing narcotics operation). Viewed in total, Smittle's affidavit describes an approximately three-month long investigation into ongoing criminal drug activity at the Belvidere address.

{¶ 25} Considering all the above, we find the totality of Smittle's affidavit provided a substantial basis for the issuing judge's conclusion that there was a fair probability that illegal drugs or other evidence of drug trafficking would be found in the residence. *George* at 330. Therefore, the trial court did not err in denying appellant's motion to suppress evidence obtained from the search, and we need not address whether the good-faith exception to the exclusionary rule applies. *Edwards* at ¶ 31.

{¶ 26} Accordingly, we overrule appellant's assignment of error.

## V. CONCLUSION

{¶ 27} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and BRUNNER, J., concur.

_____