[Cite as *State v. Jones*, 2020-Ohio-6667.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  9-20-04

    v.

LORENTHEA JONES,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 18-CR-166

**Judgment Affirmed**

Date of Decision:   December 14, 2020

APPEARANCES:

    *William T. Cramer* for Appellant

    *Nathan R. Heiser* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Lorenthea Jones ("Jones"), appeals the July 8, 2019 judgment entry of the Marion County Court of Common Pleas denying her motion to suppress evidence. For the reasons that follow, we affirm.

{¶2} This case stems from the October 10, 2017 execution of a search warrant at Jones's residence located at 546 Toledo Avenue in Marion, Ohio by the Marion Metropolitan Drug Task Force ("MARMET") during which law enforcement discovered 27 grams of methamphetamine, 139 suboxone strips, and $1,165 in cash. (Doc. No. 142). On April 5, 2018, the Marion County Grand Jury indicted Jones on Count One of possession of drugs in violation of R.C. 2925.11(A), (C)(1), a second-degree felony and Count Two of possession of drugs in violation of R.C. 2925.11(A), (C)(2), a fifth-degree felony. (Doc. No. 1). The indictment included a forfeiture specification under R.C. 2941.1417 as to each count. (*Id.*). On April 9, 2018, Jones appeared for arraignment and pleaded not guilty to the counts in the indictment. (Doc. No. 5).

{¶3} On August 15, 2018, Jones withdrew her pleas of not guilty and entered a plea of guilty to Count One and the forfeiture specification of the indictment. (Doc. No. 33). In exchange for her change of pleas, the State agreed to dismiss Count Two. (*Id.*). The trial court accepted Jones's guilty plea and found her guilty. (*Id.*). However, on September 25, 2018, Jones filed a presentence motion to

withdraw her guilty plea, which the trial court granted that same day. (Doc. Nos. 36, 37).

{¶4} On April 17, 2019, under a superseding indictment, the Marion County Grand Jury indicted Jones on: Count One of possession of drugs in violation of R.C. 2925.11(A), (C)(1), a second-degree felony; Count Two of aggravated trafficking in drugs in violation of R.C. 2925.03(A), (C)(1), a second-degree felony; Count Three of possession of drugs in violation of R.C. 2925.11(A), (C)(2), a fifth-degree felony; and Count Four of aggravated trafficking in drugs in violation of R.C. 2925.03(A), (C)(2), a fifth-degree felony. (Doc. No. 94). The superseding indictment included a forfeiture specification under R.C. 2941.1417 as to Counts One and Three. (*Id.*). Jones appeared for arraignment on May 6, 2019 and entered pleas of not guilty to the superseding indictment. (Doc. No. 113).

{¶5} On May 17, 2019, Jones filed a motion to suppress the evidence that was obtained from the execution of a search warrant at her residence. (Doc. No. 123). Specifically, Jones argued that there was insufficient evidence of probable cause to issue the search warrant "because the search warrants [sic] lacked particularity, were based on undisclosed inferences of the affiant, were based on unverified statements of a confidential informant, were based on stale evidence, and were over broad and lacked particularity as required by the Fourth and Fourteenth Amendments to the United States Constitution." (*Id.*). Further, that same day, Jones

filed a motion requesting that the trial court order the State to disclose the identity of the confidential informant ("CI"), which the trial court denied on September 11, 2019. (Doc. Nos. 117, 146).

{¶6} Also on May 17, 2019, Jones filed a motion to dismiss Counts Two and Four of the superseding indictment, the State agreed, and the trial court dismissed those counts on July 2, 2019. (Doc. Nos. 124, 137, 139).

{¶7} On July 2, 2019, the State filed its memorandum in opposition to Jones's motion to suppress evidence. (Doc. No. 136). After a hearing on July 2, 2019, the trial court denied Jones's motion to suppress evidence. (Doc. No. 140).

{¶8} The case proceeded to a jury trial on November 19-21, 2019. (Doc. No. 165). On November 21, 2019, the jury found Jones guilty of Counts One and Three of the indictment. (Doc. Nos. 163, 164, 165). On January 9, 2020, the trial court sentenced Jones to five years in prison on Count One and 11 months in prison on Count Three and ordered Jones to serve the terms concurrently for an aggregate sentence of five years in prison. (Doc. No. 170). The trial court further ordered the currency identified in the forfeiture specification forfeited after the parties agreed that it was subject to forfeiture. (*Id.*).

{¶9} Jones filed a notice of appeal on January 31, 2020. (Doc. No. 174). She raises one assignment of error.

**Assignment of Error**

**Appellant's Federal and State constitutional rights to be free of unreasonable searches and seizures was [sic] violated when the trial court refused to suppress all of the evidence in this case arising from the execution of a search warrant that was not supported by probable cause.**

{¶10} In her assignment of error, Jones argues that the trial court erred by denying her motion to suppress evidence. Specifically, Jones argues that there was insufficient evidence of probable cause to issue the October 10, 2017 search warrant and that evidence of the illegal search should be suppressed.

*Standard of Review*

{¶11} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*Analysis*

**{¶12}** "The Fourth Amendment to the United States Constitution requires that warrants issue only 'upon probable cause.'" *State v. Gonzales*, 3d Dist. Seneca Nos. 13-13-31 and 13-13-32, 2014-Ohio-557, ¶ 18. "Probable cause 'means less than evidence which would justify condemnation,' so that only the 'probability, and not a prima facie showing of criminal activity is the standard of probable cause.'" *Id.*, quoting *State v. George*, 45 Ohio St.3d 325, 329 (1989). "To search for evidence of a crime there must 'be a nexus * * * between the item to be seized and criminal behavior' as well as 'cause to believe that the evidence sought will aid in a particular apprehension or conviction.'" *Id.*, quoting *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642 (1967).

> When determining "the sufficiency of probable cause in an affidavit submitted to support a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him including "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"

*Id.* at ¶ 19, quoting *George* at paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317 (1983). "Special considerations to be taken into account when determining whether to issue a search warrant include how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the

place to be searched." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 34.

> A reviewing court should not conduct a de novo review of a [the issuing authority's] determination of probable cause. Rather, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed," according "great deference to the [issuing authority's] determination of probable cause" and resolving "doubtful or marginal cases in this area * * * in favor of upholding the warrant."

*Gonzales* at ¶ 19, quoting *George* at paragraph two of the syllabus.

{¶13} "In sum, on appeal, when we are reviewing the issuing [authority's] determination of probable cause, the review is limited to ensuring that the [issuing authority] 'had a substantial basis for concluding that probable cause existed.'" *Id.*, quoting *State v. Garza*, 3d Dist. Henry No. 7-13-04, 2013-Ohio-5492, ¶ 19, citing *George* at 332.

{¶14} On appeal, Jones challenges (1) whether the information contained in the affidavit in support of the search warrant "was too stale to support a search"; (2) whether tips provided by a confidential informant or an anonymous tip were "sufficiently credible to support a search warrant"; (3) whether there was a "sufficient nexus to support a search of 564 Toledo Avenue"; and (4) whether the good-faith exception to the exclusionary rule applies. (Appellant's Brief at 9, 12). Contrary to Jones's arguments, the issuing authority had a substantial basis for concluding that probable cause existed to issue the October 10, 2017 search warrant.

{¶15} First, Jones contends that "most of the information in the affidavit was too stale to support a search." (Appellant's Brief at 9). Namely, Jones contends that "incidents from 2015 and 2016" and "most of the information from 2017" "having occurred months before the search" "is stale." (*Id.*). She further contends that the search warrant was improperly issued on stale facts based on "the allegation that detectives had observed Jones repeatedly visiting [Roger] Friley's [("Friley")] house did not include any time frame at all. This information was probably from months before, prior to the August 2017 search of Friley's house * * * ." (*Id.*).

{¶16} The affidavit submitted in support of the search warrant, which was prepared by Detective Chad Lowe ("Lowe") of MARMET, provided the issuing authority a historical and chronological recitation of MARMET's investigation of Jones. Indeed, as an introductory paragraph, Detective Lowe effectively set the tone for the affidavit by stating, "Over the last several years, MARMET detectives have received information and numerous tips on Lorenthea Jones dealing narcotics." (Joint Ex. A). Furthermore, as part of the chronological, historical recitation, the affidavit documents Jones's 2007 and 2009 felony-drug convictions as well as MARMET's 2015-2016 investigation and eventual execution of a search warrant at the residence that Jones's shared with her boyfriend—Adair Liles ("Liles")—during which drugs were discovered. (*Id.*).

{¶17} Beginning again on April 6, 2017, Detective Lowe documented that MARMET "conducted a controlled buy from Landon Jones"—Jones's brother—for methamphetamines using a CI. (*Id.*). Thereafter, the affidavit reflects the following (relevant) information:

> 8. On 08/03/2017 MARMET conducted a drug search warrant at 635 Bartram Ave. [and] located approximately 19 grams of Crystal Meth, suboxone strips, digital scales, and other drug paraphernalia. Roger Friley Jr. is the resident of 635 Bartram Ave. * * * .
>
> 9. During the search warrant, I spoke with Roger about the Crystal Meth inside of his residence. Roger admitted that all of the Crystal Meth was his [and] told me that Lorenthea Jones is his supplier for Crystal Meth. Roger said he buys 1 ounce of Crystal Meth a week from Lorenthea Jones for $1,200[;] that Lorenthea always delivers it to his house driving a grey Dodge Charger[; and] that one of her brothers has delivered the Crystal Meth to him before.
>
> 10. Roger granted permission to search his cell phone * * * . There were several drug related text messages between Roger and Lorenthea * * * . I confirmed that Lorenthea is supplying Roger with a large amount of Crystal Meth through the text messages. Roger and Lorenthea set drug deals up, talk about how much Crystal Meth Roger has left, how much money Roger owes Lorenthea, and when Lorenthea will be over. Roger told me that every time Lorenthea comes to his house, it is to either pick up money from Roger, or deliver Crystal Meth to Roger. Roger told me Lorenthea last came over last night, which is showed in the text messages.

(*Id.*).

{¶18} Detective Lowe then notes for the issuing authority that MARMET learned in August 2017 that Jones recently moved to the residence located at 564 Toledo Avenue and that he located a Dodge Charger, which was registered to Jones,

"parked in front" of the residence." (*Id.*). The affidavit further reflects that Detective Lowe learned on September 28, 2017 that Jones was stopped on June 15, 2017 by the Ohio State Highway Patrol while operating her Dodge Charger in Portsmouth, Ohio. According to the affidavit, the trooper became suspicious of Jones after she indicated that she "did not know her passengers"—one of which being known to MARMET as a drug dealer. (*Id.*). Based on that stop, the Ohio State Highway Patrol had "pending felony possession charges on Lorenthea" after she was found to be in possession of 10 suboxone strips for which she did not have a prescription. (*Id.*).

> {¶19} Detective Lowe further avers that
>
> 12. On 09/28/2017 I spoke with a reliable source of information regarding Lorenthea Jones. This reliable source of information has worked with MARMET Detectives in the past and has been proven reliable based off their previous work and information. The reliable source of information told us that Lorenthea Jones is supplying all of Marion with Crystal Meth.

(*Id.*). Further, Detective Lowe indicates that MARMET received an anonymous tip on October 3, 2017 from a caller stating that "Friley is selling meth to everyone" and "that [Friley] lives at 635 Bartram Ave, and gets his meth from the manager of METRO PCS by Walmart who is a heavy set black female." (*Id.*). MARMET received a similar tip in a written letter on October 6, 2017. (*Id.*). Detective Lowe averred that "MARMET knows that Lorenthea Jones works at METRO PCS" and (in a paragraph immediately following those tips) that "MARMET Detectives

continue to see Lorenthea frequent Roger Frileys [sic] house on Bartram Ave. and staying only a short time[, which] is consistent with drug/money transactions." (*Id.*).

{¶20} The day before the search warrant was issued, October 9, 2017, "MARMET Detectives conducted at trash pull at 546 Toledo Ave.[, during which] a large amount of empty suboxone strips (100+), and mail addressed to Lorenthea Jones at 546 Toledo Ave. [was discovered] in the same trash bag." (*Id.*). Also that day, the "Clark County Sheriff's Office observed Lorentheas [sic] vehicle at a hotel, which they advised is a known location for drug transactions." (*Id.*). Later that evening, Detective Lowe observed Jones return to the residence located at 546 Toledo Avenue "and walked inside." (*Id.*).

{¶21} "Probable cause must be determined as of the date the warrant is requested, thus the facts presented must be relatively close in time to the date of the affidavit to be of value in making the probable cause determination." *State v. Goble*, 6th Dist. Huron No. H-13-030, 2014-Ohio-3967, ¶ 11, citing *State v. Sautter*, 6th Dist. Lucas No. L-88-324, 1989 WL 90630, *3 (Aug. 11, 1989). "Whether facts are 'too stale' to be of probative value must be decided on a case-by-case basis." *Id.*, quoting *Sautter* at *3. Specifically, "[w]hether information is stale within the context of a particular case depends on a number of factors, including the character of the crime, the character of the criminal, the nature of the thing to be seized, and

the nature of the place to be searched." *State v. Reece*, 3d Dist. Marion No. 9-17-27, 2017-Ohio-8789, ¶ 15, citing *State v. Cook*, 5th Dist. Muskingum Nos. 2010-CA-40 and 2010-CA-41, 2011-Ohio-1776, ¶ 23.

{¶22} However, "[a]n affidavit supporting a search warrant which, viewed in its totality, indicates investigation into an ongoing criminal operation, such as drug trafficking, may support the issuance of a search warrant even where the information provided in the affidavit is not recent." *State v. Morales*, 10th Dist. Franklin No. 17AP-807, 2018-Ohio-3687, ¶ 21, citing *United States v. Ortiz*, 143 F.3d 728, 733 (2d Cir.1998) ("[W]hen the supporting facts 'present a picture of continuing conduct or an ongoing activity, * * * the passage of time between the last described act and the presentation of the application becomes less significant.'"), quoting *United States v. Martino*, 664 F.2d 860, 867 (2d Cir.1981), and *State v. Ridgeway*, 4th Dist. Washington No. 00CA19, 2001 WL 1710397, *4 (Nov. 21, 2001) ("'[A]n affidavit which establishes a pattern of conduct or indicates an ongoing investigation can justify the granting of a search warrant based on old information.'"), quoting *State v. McKenzie*, 6th Dist. Erie No. E-97-040, 1998 WL 636784, *5 (Sept. 18, 1998). "Even if some information that forms the basis of a probable cause is stale, when recent information corroborates otherwise stale information, probable cause may be found." *Reece* at ¶ 15, citing *State v. Ingold*, 10th Dist. Franklin No. 07AP-648, 2008-Ohio-2303, ¶ 35. Likewise, "[w]hen used

in connection with other evidence, a suspect's criminal history can support a determination of probable cause." *State v. Shepherd*, 4th Dist. Scioto No. 07CA3143, 2008-Ohio-5355, ¶ 11.

{¶23} Reviewing the search-warrant affidavit in *context*, we conclude that the issuing authority had a substantial basis for concluding that probable cause existed to issue the search warrant. *Compare id.* at ¶ 10 (rejecting Shepherd's argument which "appear[ed] to 'cherry-pick' or highlight selected parts of the affidavit, then argue that those portions were insufficient to establish probable cause"). When viewed alone, the facts to which Jones directs us could be considered stale information; however, a review of the affidavit in it its *entirety* reveals that Jones was involved in a continuing course of drug trafficking over a period of several years. *See State v. Johnson*, 4th Dist. Highland No. 06CA36, 2007-Ohio-4158, ¶ 12 (noting that courts of appeal "do not review portions of the affidavit in isolation but, rather, consider the affidavit as a whole and employ a totality of the circumstances approach"); *State v. Myers*, 9th Dist. Summit No. 27576, 2015-Ohio-2135, ¶ 19 (noting that the "affidavit reveals that Myers was involved in a continuing course of drug trafficking since January 2014"). *See also Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, at ¶ 106 ("We hold that when no oral testimony is presented to the neutral and detached magistrate in conjunction with an affidavit for a search warrant, the probable-cause determination is based on the four corners of

the document."). "As a result, the passage of time in this matter is less significant here than situations where the affidavit relates to a single instance." *Myers* at ¶ 19, citing *United States v. Basham*, 268 F.3d 1199, (10th Cir.2001), *State v. Prater*, 12th Dist. Warren No. CA2001-12-114, 2002-Ohio-4487, ¶ 14, *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir.1993), and *State v. Gales*, 143 Ohio App.3d 55, 62 (8th Dist.2001).

{¶24} Accordingly, it is that evident Detective Lowe's reliance on historical information, including Jones's prior-drug convictions, was to establish a pattern of conduct or to convey to the issuing authority that Jones was the basis of an ongoing investigation (as is stated in the first paragraph of the affidavit). Indeed, the affidavit reveals continued drug-related activity in the days leading up to the issuance of the warrant, which "produces the inescapable conclusion that [Jones's] ongoing drug trafficking operations were still churning forward at the time that Detective [Lowe] prepared his affidavit." *Myers* at ¶ 19.

{¶25} Moreover, Jones's contention that the search warrant was improperly issued on stale facts based on "the allegation that detectives had observed [her] repeatedly visiting [Friley's] house" because it "did not include any time frame at all" is without merit. Although there is no specific date indicated with this fact, when reviewed in context, the search-warrant affidavit is presented in a manner in which the issuing authority can reasonably infer the date of the probable-cause

information from the other factual recitations and conclude that it is not stale information. *See United States v. Church*, 823 F.3d 351, 363 (6th Cir.2016). Thus, we cannot conclude that the search warrant was improperly issued on stale information in this case.

{¶26} Second, Jones contends that the affidavit fails to provide any indicia of reliability for the anonymous informants, the CI, the "reliable source of information," or Friley. "The law generally recognizes three categories of informants: 'anonymous informants' about whom the police know little or nothing, 'known informants' who are part of the criminal world, and 'citizen informants' who have witnessed criminal activity." *State v. Long*, 6th Dist. Wood No. WD-19-021, 2020-Ohio-4090, ¶ 24, quoting *Maumee v. Weisner*, 87 Ohio St.3d 295, 300 (1999).

{¶27} "'Information coming from a citizen eyewitness is presumed credible and reliable, and supplies a basis for a finding of probable cause * * * .'" *Id.* at ¶ 25, quoting *State v. Garner*, 74 Ohio St.3d 49, 63 (1995). "So 'questions of veracity and reliability are essentially obviated in cases where the information tendered in support of a search warrant derives from a crime victim or citizen eyewitness.'" *Id.*, quoting *State v. McCrory*, 6th Dist. Wood Nos. WD-09-074 and WD-09-090, 2011-Ohio-546, ¶ 21. "The Supreme Court of Ohio has reasoned that requiring the police to provide evidence of past instances of the reliability of citizens—who generally

provide police with information only once—would 'create an undue burden on the issuance of search warrants * * * .'" *Id.*, quoting *Garner* at 63.

{¶28} "In contrast, information that comes from a known informant—a person who is part of the 'criminal milieu'—is inherently more suspect." *Id.* at ¶ 26, quoting *Weisner* at 300. "Consequently, a probable-cause finding based on a known informant's tip requires that the affiant either attest to the informant's reliability, veracity, and basis of knowledge or corroborate the informant's tip through independent police work." *Id.*, citing *State v. Nunez*, 180 Ohio App.3d 189, 2008-Ohio-6806, ¶ 19-20 (6th Dist.). "That is, a known informant's word cannot be the sole basis for a finding of probable cause." *Id.*

{¶29} "Similarly, information from an anonymous informant is considered 'comparatively unreliable' and any information from an anonymous source generally requires independent police corroboration in order to support a probable-cause finding." *Id.*, citing *Weisner* at 300, citing *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412 (1990).

{¶30} Here, the informants at issue fall in either the "known informant" or the "anonymous informant" category and, as such, requires the affiant to provide a certain level of corroboration for the information. On appeal, Jones argues that Detective Lowe's corroboration was insufficient. However, notwithstanding the category of informant from whom law enforcement receives its information, "the

label used is not dispositive of whether the search warrant affidavit demonstrated" the requisite probable cause to issue the search warrant." *Id.* at ¶ 29, citing *Weisner* at 300 ("[T]he United States Supreme Court discourages conclusory analysis based solely upon [the] categories * * *" of informants.). *See also State v. Dibble*, 133 Ohio St.3d 451, 2012-Ohio-4630, ¶ 22 (noting that "[t]he validity of a search-warrant affidavit should not turn on the identifier that an officer selects when trying to protect a person's identity."). "Instead, we look at the totality of the circumstances." *Long* at ¶ 29, citing *Weisner* at 300.

{¶31} Nevertheless, Detective Lowe sufficiently corroborated the known informants' and the anonymous informants' information. First, Detective Lowe described a "controlled buy" using a CI (identified as "Confidential Informant 16-31") from which MARMET "received reliable information" "that Landon [Jones] was dealing Crystal Meth for Lorenthea." (Joint Ex. A). Even though Detective Lowe's statement that the CI's information was "reliable" without more may not sufficiently establish the CI's credibility, Detective Lowe provided independent corroborating evidence—that "Landon and Lorenthea are brother/sister" for the CI's information. (Joint Ex. A). *See State v. Urdiales*, 3d Dist. Henry No. 7-15-03, 2015-Ohio-3632, ¶ 18. Furthermore, the issuing authority was provided additional corroboration for the information provided by the CI from Friley's statement "that

one of [Jones's] brothers ha[d] delivered the Crystal Meth to [Friley] before." (Joint Ex. A).

{¶32} Moreover, Detective Lowe's averment that the "reliable source of information has worked with MARMET Detectives in the past and has been proven reliable based off their previous work and information" provided sufficient corroboration for the information. (*Id.*). *See State v. Bailey*, 12th Dist. Butler No. CA2002-03-057, 2003-Ohio-5280, ¶ 13 (concluding that because "the informants had worked with the police in the past, and were known by the police to be reliable," reliability was established). Likewise, the tip from the "reliable source of information" that "Jones [was] supplying all of Marion with Crystal Meth" was further corroborated by Detective Lowe's independent police investigation linking Jones to the distribution of methamphetamines in Marion.

{¶33} Next, the information provided to law enforcement by Friley—also a known informant—was sufficiently corroborated through Detective Lowe's independent police work—namely, Detective Lowe's search of Friley's cell phone revealing drug-related texts between Friley and Jones. Friley's statements were further corroborated with MARMET's observation of Jones frequenting Friley's residence and staying only a short time, which (according to Detective Lowe) is behavior consistent with drug or money transactions. (*See* Joint Ex. A).

**{¶34}** Finally, the anonymous informants' tips, which relayed almost identical information, were corroborated through Detective Lowe's independent police work—that is, the tips indicated that Friley was obtaining methamphetamine from the manager (a black female) of METRO PCS by Walmart. As previously corroborated, law enforcement established a link between Jones and Friley. Further, Detective Lowe informed the issuing authority that MARMET knew that Jones worked at METRO PCS.

**{¶35}** In sum, based on the totality of the information provided in the affidavit, we cannot say that any of the known informants' or the anonymous informants' information was insufficiently corroborated. *See Urdiales*, 2015-Ohio-3632, at ¶ 21 (noting that the Supreme Court of Ohio has "recognized that an extensive description of the facts or events in the affidavit may add credibility to the information presented"), citing *State v. Graddy*, 55 Ohio St.2d 132, 140 (1978). Nevertheless, the probable cause in this case is not based solely on the tips of the informants; rather, the probable cause is generated from the totality of the circumstances portrayed by the search-warrant affidavit. *See State v. Dennison*, 7th Dist. No. 17 CO 0039, 2018-Ohio-5126, ¶ 21 ("The probable cause in this case, however, is not based solely on the controlled purchases, but all the information contained in the affidavit.").

{¶36} Next, Jones contends that the issuing authority was without a substantial basis for concluding that probable cause existed to issue the search warrant because there was a "lack of a nexus between drug trafficking and 564 Toledo Avenue, the totality of the circumstances did not support a probability of finding drugs at 564 Toledo Avenue." (Appellant's Brief at 14). "Crim.R. 41(C) provides that an affidavit in support of a search warrant 'shall * * * particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located.'" *State v. Phillips*, 10th Dist. Franklin No. 15AP-1038, 2016-Ohio-5944, ¶ 13, citing *State v. Harry*, 12th Dist. Butler No. CA2008-01-013, 2008-Ohio-6380, ¶ 16 (stating that Crim.R. 41(C) "requires that there be a 'nexus' between the place to be searched and the items to be seized"), *State v. Freeman*, 4th Dist. Highland No. 06CA3, 2006-Ohio-5020, ¶ 13 (noting that "[t]he nexus between the items sought and the place to be searched depends upon all of the circumstances of each individual case, including the type of crime and the nature of the evidence"), and *State v. Marler*, 2d Dist. Clark No. 2007 CA 8, 2009-Ohio-2423, ¶ 26.

{¶37} "When considering whether a nexus exists between the alleged crime and the place to be searched, '"the circumstances must indicate why evidence of illegal activity will be found in a particular place."'" *Id.* at ¶ 14, quoting *United*

*States v. Washington*, 380 F.3d 236, 240 (6th Cir.2004), quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir.2004). "'[A] nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence.'" *Id.*, quoting *United States v. Gunter*, 266 Fed.Appx. 415, 419 (6th Cir.2008). *See also Dennison*, 2018-Ohio-5126, at ¶ 24.

{¶38} Contrary to Jones's argument on appeal, when considering the *totality* of the circumstances (and being mindful of the deference provided to a neutral issuing authority's decision regarding the existence of probable cause), we conclude that the affidavit in this case sets forth sufficient facts to establish a nexus between the alleged criminal activity and Jones's residence. *See Phillips* at ¶ 25; *Dennison* at ¶ 25. Importantly, immediately following the Clark County Sheriff's Office's surveillance of Jones at a location known for drug transactions, Detective Lowe observed Jones return to (and enter) her residence. *Compare Phillips* at ¶ 25 ("Importantly, immediately following the first drug transaction, officers observed that appellant went directly to the residence and walked inside."). Likewise, the search-warrant affidavit further established that Jones was living at the residence. *See id.* Indeed, Detective Lowe confirmed Jones's vehicle was parked outside the residence and observed "Jones exit her vehicle and walk into 546 Toledo Ave[nue

and] used a key to enter the residence" four days prior to the issuance of the search warrant. (Joint Ex. A).

{¶39} Additionally, the day prior to the issuance of the search warrant, law enforcement conducted a trash pull at the residence and discovered "a large amount of empty suboxone strips (100+), and mail addressed to Lorenthea Jones at 546 Toledo Ave." (*Id.*). *See State v. Quintero*, 10th Dist. Franklin No. 18AP-102, 2018-Ohio-5145, ¶ 25 (concluding that the search-warrant "affidavit established a sufficient nexus with illegal activity inside the residence" based in part from evidence collected from a trash pull). Furthermore, the affidavit suggests Detective Lowe's experience with narcotics investigations through education and his tenure with drug task forces. *See State v. Nelson*, 12th Dist. Clermont No. CA2017-08-042, 2018-Ohio-2819, ¶ 23 (noting that a "nexus exists when the search warrant affidavit describes the investigating law enforcement officer's experience in narcotics investigation, the officer's averment that drug dealers typically keep drugs in their homes, and the officer's observation of the defendant visiting his residence right before he traveled to the site of a drug sale"), citing *United States v. Gunter*, 266 Fed.Appx. 415, 419 (6th Cir.2008). *Compare Phillips* at ¶ 26 (noting the detective's "significant experience in narcotics investigations" in analyzing one nexus between the alleged criminal activity and the residence).

**{¶40}** Based on the foregoing analysis, we conclude that the *totality* of the search-warrant affidavit provided the issuing authority a substantial basis to conclude that there was a fair probability that probable cause existed that drugs would be found in Jones's residence. *See Morales*, 2018-Ohio-3687, at ¶ 25, citing *George*, 45 Ohio St.3d at 330. Accordingly, the trial court did not err by denying Jones's motion to suppress evidence obtained from the search of her residence, and we need not address whether the good-faith exception to the exclusionary rule applies. *Id.*, citing *State v. Edwards*, 10th Dist. Franklin No. 12AP-992, 2013-Ohio-4342, ¶ 31.

**{¶41}** Jones's assignment of error is overruled.

**{¶42}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**