**[Cite as *State v. Wallace*, 2020-Ohio-4168.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                      Court of Appeals No. WD-19-080

      Appellee                                  Trial Court No. 2018CR0369

v.

Kayla Wallace                                **DECISION AND JUDGMENT**

      Appellant                                 Decided:  August 21, 2020

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

**{¶ 1}** This matter is before the court on appeal from the judgment of the Wood

County Court of Common Pleas, denying the motion to suppress of appellant Kayla

Wallace.  For the following reasons, we reverse.

## II. Facts and Procedural Background

{¶ 2} On January 21, 2018, city of Rossford patrol officers Brandon Lewis and Austin McDermott planned to meet for dinner around 7:00 p.m. at a diner on Superior Street, in Rossford, Ohio. Officer McDermott parked in front of an apartment building at 153 Superior, and as he exited his vehicle, he smelled raw marijuana. After Officer Lewis arrived, he joined McDermott and indicated that he, too, smelled raw marijuana. The officers initially suspected the odor was emanating from an open window in the apartment building. After the two walked up and down the street, investigating the source of the odor, and after speaking with an apparent tenant from the apartment building, they ultimately determined the smell was emanating from a nearby storefront at 155 Superior. The apartment resident informed Lewis and McDermott that he had noted a marijuana odor at 155 Superior over the past two to three weeks and suggested someone should investigate the matter.

{¶ 3} The officers checked out the building at 155 Superior. The storefront had a bolt on the front door, boards over the windows, and no signs, lights, or activity to suggest an active business. Fencing between 155 Superior and adjoining buildings prevented officers from viewing the rear of the building, so the officers walked around the apartment building at 153 Superior to access the alley that ran behind the two properties.

{¶ 4} As Lewis and McDermott walked along the alley and neared the rear of 155 Superior, the odor of raw marijuana intensified. The two repeatedly stepped away from

2.

155 Superior and walked back to confirm the source of the odor as 155 Superior. They then entered the property through a closed gate, and noted a garage, fencing, and overgrown vegetation. The property also had a shed, but vegetation covered the structure, with vines blocking the doors. The officers also saw a truck on the property, and a grill and lawn chair in the backyard area. There were two rear doors on the building, as well as a sign indicating the address as 155 ½. A security light, mounted on the building, illuminated the back of the structure.

{¶ 5} Officer Lewis discovered one of the doors on the back of the building was unlocked. Due to the condition of the structure, with rotting, swollen wood framing the door, Lewis could not easily open this door. There was also a bookshelf pushed up against the inside of the door, preventing the door from swinging open. Lewis was able to nudge the door open a few inches, and through that gap, he and McDermott viewed a washer and dryer, clothes, and other items suggesting someone lived in the structure. They also spotted tomato cages, often used in grow operations, and the odor of raw marijuana became much stronger. Lewis closed the door, and he and Officer McDermott exited the property to notify their shift supervisor and consult with a detective.

{¶ 6} As they stood in the alley, phoning the shift supervisor, appellant pulled her vehicle into the alley and spoke with the officers. They informed her of the odor of raw marijuana and requested consent to search the home. Appellant declined, indicating she had to go to work. The officers subsequently observed her driving past the property several times, parking down the block, and running back and entering the property. The

3.

Officers later determined that appellant and Ricky Dockum, Jr. resided at 155 ½ Superior.

{¶ 7} Officer McDermott prepared an affidavit for a search warrant of the property, identifying the occupant as appellant. He attested to the strong odor of raw marijuana emanating from the front and back of the structure at 155 Superior, and contact with a resident from the building next door, who informed officers that the odor of marijuana had been present for the past two or three weeks. The affidavit also contained facts gleaned from entering the rear of the property and pushing open a back door.

{¶ 8} The officers obtained the requested search warrant. Around 11:00 p.m., police searched the premises, and seized evidence of a grow operation from inside 155 ½ Superior, including blowers, grow lights, hydroponic containers, chemicals, thermostats, containers holding unknown substances, marijuana plants and loose marijuana, and tomato cages. Based on the evidence seized, police filed charges against appellant and Ricky Dockum.

{¶ 9} On August 2, 2018, appellant was charged with Count 1: illegal cultivation of marijuana in violation of R.C. 2925.04(A) and (C)(5)(c), Count 2: illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A) and (C), Count 3: possession of marijuana in violation of R.C. 2925.11(A) and (C)(3)(c), and Count 4: possession of hashish in violation of R.C. 2925.11(A) and (C)(7)(d).

4.

{¶ 10} Appellant entered a not guilty plea to the charges. Appellant and Ricky Dockum filed a joint motion to suppress evidence of the search, arguing the information gathered for the affidavit in support of the search warrant resulted from an unconstitutional search of the premises. They further argued the affidavit provided insufficient facts to establish probable cause. After an evidentiary hearing, the trial court determined the search of the curtilage and entry into the home was unconstitutional, but the affidavit contained sufficient facts—not the product of an unconstitutional search—to establish probable cause to search the premises.

{¶ 11} On June 10, 2019, appellant withdrew her not guilty plea, and entered a plea of no contest to the indictment. The trial court accepted the plea, found appellant guilty, and referred the matter for a presentence investigation report. After hearing, the trial court sentenced appellant to 2 years of community control as to each count, with a reserved prison term of 12 months as to Count 1, 36 months as to Count 2, 12 months as to Count 3, and 36 months as to Count 4.

### III. Assignments of Error

{¶ 12} Appellant now appeals the trial court's denial of the motion to suppress, asserting the following assignments of error:

> 1. The Trial Court erred in denying Appellant's Motion to Suppress because mere smell of raw marijuana does not provide sufficient probable cause to support the issuance of a search warrant.

2. There was not sufficient probable cause for the issuance of a search warrant, thus all evidence obtained as a result of the execution of the search warrant must be suppressed.

3. Appellant's trial attorney's failure to request a hearing pursuant to Franks v. Delaware [438 U.S.154, 98 S.Ct.2674, 57 L.Ed.2d 667 (1978)] as a result of the false statements and material omissions in the search warrant affidavit was ineffective assistance of counsel.

## IV. Analysis

{¶ 13} We consider appellant's assignments of error out of order, addressing the third assignment of error first, challenging the veracity of all statements in the search warrant affidavit, followed by consideration of the first and second assignments of error, challenging the sufficiency of probable cause for issuance of the search warrant, based on remaining statements in the affidavit.

## A. *Franks* Hearing

{¶ 14} In her third assignment of error, appellant argues that her trial counsel was ineffective in failing to demand a *Franks* hearing following the trial court's denial of her motion to suppress. Specifically, appellant argues her trial counsel should have sought a hearing to challenge both officers' "veracity as a whole," based on the suppression hearing testimony of Officer McDermott that Officer Lewis pushed the door open with his shoulder, compared to McDermott's statement in the affidavit that he "found the door was unsecured and opened by pushing on the door." Appellant's motion to suppress

6.

challenged both the incursion on the curtilage and brief entry into the home, as well as the sufficiency of probable cause in the affidavit.

{¶ 15} Generally, where a criminal defendant challenges the sufficiency of probable cause in a search warrant affidavit, the trial court is limited to reviewing the "facts alleged within the 'four corners' of the affidavit." *State v. Riley*, 6th Dist. Lucas No. L-07-1379, 2009-Ohio-3493, ¶ 21, quoting *State v. OK Sun Bean*, 13 Ohio App.3d 69, 71, 468 N.E.2d 146 6th Dist.1983) (additional citation omitted.); *see also State v. McClain*, 2015-Ohio-3690, 41 N.E.3d 871, ¶ 7 (2d Dist.). A trial court, however, may consider evidence beyond the four corners of the affidavit to determine whether the good faith exception applies to otherwise improperly seized evidence. *State v. Dibble*, Slip Opinion 2020-Ohio-546, ¶ 1. In this case, the trial court held an evidentiary hearing, determined the officers improperly searched the curtilage and home, but otherwise included sufficient, properly obtained information in support of probable cause in the search warrant affidavit.

{¶ 16} Appellant now argues that her trial counsel was ineffective in failing to request a *Franks* hearing, in addition to the evidentiary hearing already held. A *Franks* hearing goes beyond cross-examination of an affiant, to address allegations of deliberate or reckless falsehoods in the search warrant affidavit. *State v. Pitts*, 6th Dist. Lucas No. L-18-1242, 2020-Ohio-2655, ¶ 28, quoting *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), syllabus. To merit a *Franks* hearing, appellant needed to first make a "substantial preliminary showing that a false statement knowingly and

7.

intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and probable cause relied on the alleged false statement. *Franks* at 155-156. *See also State v. Roberts*, 62 Ohio St.2d 170, 177, 405 N.E.2d 247 (1980).

{¶ 17} Appellant cites to no evidence, triggering the need for a *Franks* hearing. Instead, she argues inconsistencies between Officer McDermott's affidavit and his testimony at the evidentiary hearing, concerning circumstances deemed part of an unconstitutional search of the curtilage and home and rejected as a basis for probable cause. Appellant's assertion that Officer McDermott averred in the affidavit that he opened the door, moreover, is a mischaracterization of the actual statement, indicating the door was opened by pushing, a statement without any attribution regarding the act of pushing.

{¶ 18} Appellant also argues that Officer McDermott omitted material facts, such as the vehicle parked in the driveway and a sign on the front of the building that directed deliveries to the back door. As with the alleged false statements, however, the omitted facts pertained to an issue already decided in appellant's favor, that the entry onto the curtilage and into the home was improper.

{¶ 19} To merit reversal based on ineffective assistance of counsel, appellant must demonstrate his counsel's performance "fell below an objective standard of reasonableness[,]" and this performance resulted in prejudice to the defense. *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989), quoting *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d. 674 (1984). In arguing

8.

ineffective assistance, appellant fails to identify any error by failing to point to any evidence that would have required a *Franks* hearing, had trial counsel requested one. Accordingly, we find appellant's third assignment of error not well-taken.

## B. Probable Cause

{¶ 20} In her first two assignments of error, appellant challenges the trial court's decision regarding suppression of evidence obtained from the search, arguing odor alone is insufficient evidence for a search, and the affidavit lacked sufficient probable cause to support issuance of the warrant. Our review of a motion to suppress "presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We accept the trial court's factual findings, so long as they have the support of competent, credible evidence, and "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *Burnside* at ¶ 8.

{¶ 21} The Fourth Amendment of the United States Constitution and Article I, Section 14 of the Ohio Constitution provide protections against unreasonable search and seizure, and require probable cause for issuance of a warrant. Additionally, Crim.R. 31(C) provides protections against Fourth Amendment violations, requiring a supporting affidavit prior to issuance of a warrant. The affidavit must describe the place to be searched, the property to be searched for and seized, and identify the offense in relation to the property, along with facts supporting a belief that the property is concealed at the place to be searched. *See* R.C. 2933.23. Evidence obtained through a warrantless search,

9.

with a few exceptions, is per se unreasonable and inadmissible. *State v. Williams*, 173

Ohio App.3d 119, 2007-Ohio-4472, 877 N.E.2d 717, ¶ 12 (6th Dist.), citing *Mapp v.*

*Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

{¶ 22} The trial court rejected the officers' claim that they believed the building to be abandoned, and found the officers' initial entry onto the property's curtilage without a warrant violated the Fourth Amendment to the United States Constitution and Article I, Section 10, or the Ohio Constitution. The trial court, next, considered the sufficiency of the remaining facts within the affidavit, and determined there was sufficient probable cause to support the search warrant.

{¶ 23} Omitting facts gleaned from entry on the curtilage and inside the property, there are few averments in support of the warrant. The officers each noted a strong odor of raw marijuana in front of and behind the property, and articulated they possessed the training and experience to recognize the odor. They also had a conversation with the next-door apartment resident, who stated there was an odor of marijuana emanating from 155 Superior "for the past two or three weeks."[1] Finally, the officers encountered appellant as they stood in the alley, phoning their shift supervisor, and appellant declined

[1] While not part of the affidavit, the officers initially believed the odor emanated from the apartment building. After officers indicated an intention to enter the apartment to investigate the source of the odor, an individual claiming to be a resident of the apartment redirected their search to 155 Superior, and the officers ceased any attempt to verify whether the odor emanated from within the apartments. Neither officer had ever spoken with this individual before, he was not identified in any report, and neither officer knew his name.

to consent to a search after they asked her about the odor or raw marijuana. She indicated she had to go to work, but the officers observed her parking down the street and running through the backyard and into the building. Essentially, the generalized odor of marijuana from 155 Superior was the only evidence of illicit activity, and the trial court deemed this evidence sufficient to support the search warrant for a search within the home.

{¶ 24} Appellant now argues, in her first assignment of error, that the smell of raw marijuana, standing alone, is never sufficient as probable cause to search a home. We reject this absolute argument, as circumstances may exist in which the odor of raw marijuana is sufficient as probable cause to search a home. We previously noted that the smell of *burnt* marijuana does not permit a search of a vehicle's trunk, but "the odor of raw marijuana provides different probable cause than the odor of burnt marijuana." *State v. Gonzales*, 6th Dist. Wood No. WD-07-060, 2009-Ohio-168, ¶ 21-22. "The odor of raw marijuana – especially an overwhelming odor of raw marijuana – creates probable cause to believe that a large quantity of raw marijuana will be found." *Id.* at ¶ 22. Therefore, we find there may be some instances in which the odor of raw marijuana could support a search warrant, and we find appellant's first assignment of error not well-taken.

{¶ 25} The place to be searched in this case, however, is not a vehicle, but a property containing structures. While the officers possessed training and experience to detect the odor of raw marijuana, the properly obtained evidence, recited in the affidavit for a search warrant, failed to establish any nexus between the odor of marijuana and

11.

where on the property it could be located, and indeed, if it was on that property. Before issuing a search warrant, the issuing judge must have facts that demonstrate "a fair probability that contraband or evidence of a crime will be found *in a particular place*." *State v. Riley*, 6th Dist. Lucas No. L-07-1379, 2009-Ohio-3493, ¶ 22, quoting *State v. George*, 45 Ohio St.3d at 329, 544 N.E.2d 640, quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983) (emphasis sic.) In this case, the evidence confirming the source of the marijuana odor, demonstrating a fair probability that raw marijuana was inside the home, was obtained by the illegal entry to the curtilage and inside the home.

{¶ 26} To permit a search of someone's home, there must first be reliable evidence "connecting the criminal activity with the place to be searched." *State v. Phillips*, 10th Dist. Franklin No. 15AP-1038, 2016-Ohio-5944, ¶ 15, citing *United States v. Schultz*, 14 F.3d 1093 (6th Cir.1994). After excluding the facts obtained through entry on the curtilage and into the home, the affidavit lacked any evidence that connected the strong odor of marijuana and the inside of the home. Instead, the officers and a neighbor believed the odor emanated from the property at 155 Superior, without any averment of legally obtained information to identify a particular place on the property, let alone the inside of the home, as the place where marijuana might be found.

{¶ 27} The evidence demonstrates adjacent buildings, sheds, and a garage in close proximity to 155 ½ Superior, and a fence shielding the yard from public view. Had the home been the only structure in the vicinity, with no other place to conceal growing

12.

marijuana, the facts might support a finding of probable cause. Here, however, the averments containing legally obtained information fell short of connecting the odor of raw marijuana to the particular place to be searched. The warrant, therefore, issued without sufficient probable cause, and the trial court erred in finding otherwise.

{¶ 28} While finding sufficient probable cause to support issuance of the warrant, the trial court also considered whether the exclusionary rule should be applied in this case. Evidence is excluded, not as a remedy for Fourth Amendment violations, but as a "deterrent against future violations." *Dibble*, 2020-Ohio-546 at ¶ 15, citing *Davis v. United States*, 564 U.S. 229, 237-237, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011).

{¶ 29} The trial court found suppression of all evidence obtained from execution of the search warrant "would not meet the goals of the exclusionary rule," noting the entry onto the curtilage and property were not necessary to a finding of probable cause. Thus, the trial court determined the exclusionary rule did not apply because the search warrant was properly issued, necessitating no inquiry into good faith. However, we determined the trial court erred in finding sufficient probable cause, so must next address whether the good faith exception applies.

{¶ 30} The good faith exception to the exclusionary rule applies to evidence obtained by an officer who objectively and reasonably relied on a technically sufficient warrant. *Dibble* at ¶ 17, quoting *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The exception applies and permits the use of evidence obtained by officers acting in "objectively reasonable reliance on a search warrant issued

13.

by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *State v. Wildman*, 185 Ohio App.3d 346, 2009-Ohio-6986, 923 N.E.2d 1240 (6th Dist.), ¶ 17, quoting *George*, 45 Ohio St.3d at 330, 544 N.E. 2d 640.

{¶ 31} Here, the state argues an exception to exclusion because the officers were objectively reasonable in their mistaken belief that the property was abandoned, and the warrantless search did not therefore mandate suppression of the evidence. In support, the state relies on distinguishable authority involving a reasonable mistake of fact regarding abandoned property based on officers' long-term observations of apparent abandonment, as in *United States v. Harrison*, 689 F.3d 301 (3d Cir.2012), or based on an unkempt and empty property, with an open door and no electricity, as in *McKenney v. Harrison*, 635 F.3d 354 (8th Cir.2011).

{¶ 32} The facts in this case, however, support the trial court's finding that the officers' belief was unreasonable, considering the evidence of a habitation, including a sign directing package deliveries to the rear, the separate address placard of 155 ½ near the rear door, the lit security light on the back of the property, and the grill and lawn furniture in the backyard. As previously stated, we must accept the trial court's factual findings where they are supported by the evidence. *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.

{¶ 33} The trial court found the officers' professed belief of an abandoned building to be unreasonable and contrary to the facts, rendering the entry onto the curtilage and within the home an unlawful entry. The evidence supports this finding, as

14.

does the search warrant affidavit, which contained few factual observations to indicate a vacant building. The affidavit merely stated the officers' assumption that the property was vacant, based on trash and broken furniture in the backyard, followed by a warrantless entry onto the property and subsequent conversation with Wallace, identified as a resident of the *occupied* premises. And while the affidavit recites Wallace's suspicious conduct after refusing to consent to a search of her home, the officers had already opened the door to her home, looked inside, and included evidence of that search in seeking the warrant.

{¶ 34} By asserting a mistaken belief that the building was vacant, as a good faith exception, the state precludes other argument that might have excused the incursion through the back gate and onto the property. There is no argument of an ongoing emergency that required attention, and no claim that officers approached the door at 155 ½ to knock and speak with a resident. Based on hearing testimony, the officers conducted little investigation before proceeding to a warrantless search of 155 ½ Superior.

{¶ 35} Each officer testified that they initially believed the raw marijuana odor originated within the apartment building, but once they encountered an apparent resident of that building, and were redirected to 155 Superior by that individual, they never followed up to rule out the apartments as a source of the raw marijuana smell. Instead, the officers credited an apartment resident's claim of no marijuana in that building,

15.

proceeded to enter the property next door, and conducted a warrantless search of the premises at 155 ½ Superior.

{¶ 36} The officers then used the evidence obtained in their unlawful search to secure a search warrant, mischaracterizing the property at 155 ½ as appearing vacant, adding details of Wallace's after-the-fact suspicious behavior, part of their post-search investigation. Those same officers then executed the search warrant, with knowledge of the events leading to that second search, and no separation between the evidence seized and the wrongful conduct of the officers. *See State v. Torres,* 6th Dist. Lucas No. 2008-Ohio-2090, ¶ 18, citing *United States v. Holmes,* 505 F.3d 1289, 1293 (D.C.Cir.2007) (suppression not required where illegal seizure and discovery of evidence are so attenuated "that the taint of the unlawful government conduct was dissipated.").

{¶ 37} Considering the circumstances in this case, we find no basis to apply the good faith exception to the exclusionary rule to save an insufficiently supported warrant, sought as a purge for the prior unlawful entry onto the premises. Instead, the deterrent purpose of the exclusionary rule appears tailored to the conduct demonstrated in this case. Accordingly, we find appellant's second assignment of error well-taken, as the warrant was issued without probable clause, and reverse the judgment denying appellant's motion to suppress.

## V. Conclusion

**{¶ 38}** For the forgoing reasons, we reverse the judgment of the Wood County Court of Common Pleas, denying the motion to suppress. This matter is remanded for proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.            _____
                                                JUDGE
Christine E. Mayle, J.

                                        _____
Gene A. Zmuda, P.J.                              JUDGE
CONCUR.

                                        _____
                                                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.