**[Cite as *State v. Martin*, 2021-Ohio-2599.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


|                        |   |                           |
|------------------------|---|---------------------------|
| STATE OF OHIO,         | : | APPEAL NO. C-200067       |
|                        |   | TRIAL NO. B-1803702-B     |
|   Plaintiff-Appellee, | : |                    |
|                        | : | *O P I N I O N.*          |
|   vs.        |   |                           |
|                        | : |                           |
| ABBEY MARTIN,          | : |                           |
|                        |   |                           |
|   Defendant-Appellant. | : |                  |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed, Convictions Vacated, and Cause Remanded.

Date of Judgment Entry on Appeal: July 30, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *H. Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} After discovering that two new residents of his jurisdiction had been previously investigated for drug trafficking in Butler County, a Hamilton County detective assumed that they would resume their illicit activities here. His suspicions deepened when a late-night trash pull revealed indicia of recently-smoked marijuana. But rather than marshal his own, up-to-date evidence of drug trafficking, the detective applied for a search warrant based on years-old stale information from Butler County. The trial court recognized that the affidavit fell below a showing of probable cause, but denied the defendant's motion to suppress based on the application of the good-faith exception. We disagree with the applicability of the good-faith exception on these facts, reverse the trial court's judgment overruling the defendant's motion to suppress, and remand for the granting of the defendant's suppression motion.

I.

{¶2} Nearly six years ago—in September of 2015—Butler County police officers began investigating a potential marijuana trafficking operation in West Chester, Ohio. Confidential informants suggested that one subject of the investigation, Jacob Stonitsch, purchased marijuana from Michigan dispensaries and returned to Ohio to sell it. For the next 15 months, Butler County officers gathered evidence against Mr. Stonitsch as they built their case. They obtained and reviewed suspicious text messages, collected anonymous tips, and interviewed known associates. Cell phone pings and a GPS tracker attached to Mr. Stonitsch's vehicle confirmed movements consistent with drug trafficking, including recurring trips to Michigan. After well over a year of thorough and continuous investigation, a Butler

County officer obtained a warrant to search the West Chester home shared by Mr. Stonitsch and his then-girlfriend, defendant-appellant Abbey Martin. The investigation culminated in drug charges against both individuals, all filed in Butler County.

{¶3} None of this explains how Ms. Martin and Mr. Stonitsch ended up as codefendants charged with drug trafficking in Hamilton County. To understand that connection, we must fast-forward another 14 months. On March 30, 2018, a Butler County officer involved with the previous investigation notified a Hamilton County detective that Ms. Martin and Mr. Stonitsch recently moved to Colerain Township. Along with other information about the Butler County investigation, the Butler County officer provided the Hamilton County detective with a copy of the affidavit he used to obtain the warrant to search their West Chester residence.

{¶4} The most recent information contained in this Butler County affidavit dated from January 2017, roughly 14 months before the discussion with the Hamilton County detective. Presumably, the information was intended to aid the detective in launching a new investigation of possible trafficking in Hamilton County. But for the next few months, no new evidence of drug trafficking—by Mr. Stonitsch or by Ms. Martin—surfaced. No surveillance of the couple's Hamilton County home occurred, no tips or information implicating either individual in drug activity materialized, and no efforts were made to track Mr. Stonitsch's phone or to monitor the whereabouts of his vehicle. Between March 30, 2018, and June 19, 2018, police witnessed no drug-related activity whatsoever at Ms. Martin and Mr. Stonitsch's new address.

{¶5}   Nevertheless, on June 19, 2018, the Hamilton County detective conducted a trash pull at their residence.  After sifting through the trash, officers discovered loose marijuana leaves, a marijuana cigar, "multiple" empty vacuum-sealed plastic bags, and two cut straws—with one of those straws containing white powder residue.  The detective believed that the interior of the plastic bags smelled like raw marijuana, but chose not to test the bags or straws for drug residue.  He later acknowledged that all of the trash pull evidence was consistent with personal drug use and that he did not know how long the trash lingered on the curb.

{¶6}   Armed with this trash-pull evidence, the Hamilton County detective prepared a 34-paragraph affidavit for a warrant to search Ms. Martin's home.  But rather than draft from a blank slate, he copied 28 paragraphs of his affidavit word-for-word from the Butler County affidavit handed to him several months before.  The new affidavit did not explain, on its face, the copying of the Butler County text, which created ambiguity about the identity of the "affiant" in various paragraphs (the "affiant" sometimes referred to the Butler County officer and sometimes to the Hamilton County detective).  The detective italicized the 28 paragraphs of Butler County text (presumably to distinguish it), added three paragraphs describing his qualifications, and concluded with a three paragraph description of the evidence obtained from the June 19 trash pull.

{¶7}   After executing the warrant on June 26, 2018, the state charged Ms. Martin and Mr. Stonitsch with trafficking in hashish, possession of hashish, trafficking in marijuana, and possession of marijuana based on evidence seized during the search.   Both codefendants moved to suppress, asserting various arguments against the validity of the warrant.   The trial court, surveying the

4

evidence, saw no probable cause, remarking that "[t]he evidence from one trash pull on one day was not enough to corroborate the evidence from Butler County where that evidence was 17 months to three years old."

{¶8} Despite its finding that the affidavit failed to show probable cause, the trial court denied the motion to suppress, applying the good-faith exception to the exclusionary rule. Ms. Martin subsequently pled no contest on all counts. The trial court sentenced her to the mandatory minimum of 5 years for trafficking in hashish and 18 months for trafficking in marijuana, with sentences to be served concurrently. Ms. Martin now appeals, asserting a single assignment of error.

II.

{¶9} In her sole assignment of error, Ms. Martin maintains that the trial court erred when it denied her motion to suppress. "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Taylor*, 174 Ohio App.3d 477, 2007-Ohio-7066, 882 N.E.2d 945, ¶ 11 (1st Dist.). So long as a trial court's findings of fact are supported by competent, credible evidence, we must accept those findings as true. *Id.* In contrast, we review de novo "whether the facts satisfy the applicable legal standard." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶10} Ms. Martin attacks the detective's affidavit as so lacking in indicia of probable cause that no reasonable official could have relied on it. The state disagrees, insisting that if any error occurred below, it was the trial court's determination of the absence of probable cause. Since this debate informs the proper application of the good-faith exception, we begin our analysis with the issue of probable cause, and agree with the trial court's assessment of its absence.

A.

{¶11} "To establish probable cause to issue a search warrant, an affidavit must contain sufficient information to allow a magistrate to draw the conclusion that evidence is likely to be found at the place to be searched." *State v. German*, 1st Dist. Hamilton No. C-040263, 2005-Ohio-527, ¶ 13, citing *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Probable cause, in turn, exists when a "reasonably prudent person would believe that there is a fair probability that the place to be searched contains evidence of a crime." *Id.,* citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "It is a basic, fundamental principle of the law of search and seizure that an affidavit for a search warrant must present *timely* information." (Emphasis added.) *State v. Jones*, 72 Ohio App.3d 522, 526, 595 N.E.2d 485 (6th Dist.1991). *See Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 77 L.Ed. 260 (1932) ("[I]t is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time."). Finally, "[t]o permit a search of someone's home, there must first be reliable evidence 'connecting the criminal activity with the place to be searched' " (i.e., the home). *State v. Wallace,* 6th Dist. Wood No. WD-19-080, 2020-Ohio-4168, ¶ 26, quoting *State v. Phillips*, 10th Dist. Franklin No. 15AP-1038, 2016-Ohio-5944, ¶ 15, citing *United States v. Schultz*, 14 F.3d 1093 (6th Cir.1994).

{¶12} Thus, to establish probable cause, the detective's affidavit needed to contain timely information that would lead a reasonable person to conclude that Ms. Martin's residence likely contained evidence of drug trafficking on June 26, 2018 (when the warrant was executed). *See State v. Goble,* 2014-Ohio-3967, 20 N.E.3d 280, ¶ 8, 16 (6th Dist.) (trash pull "findings support[ing] only the commission of a

minor misdemeanor, the possession of marijuana" are insufficient to provide probable cause to search a residence for evidence of trafficking).

{¶13} Zeroing in on the requirement that an affidavit present timely information, Ms. Martin portrays the 17-to-33-month-old Butler County information as too stale to support a finding of probable cause. Even if we could overlook the sheer age of the information, she emphasizes that all the Butler County evidence concerned a former residence located in (obviously enough) Butler County—not the Hamilton County residence for which the warrant was sought.

{¶14} While no arbitrary time limit dictates when information grows stale, evidence generally "becomes stale 'when enough time has elapsed such that there is no longer "sufficient basis to believe * * * that the items to be seized are still on the premises." ' " *State v. Rieves*, 2018-Ohio-955, 109 N.E.3d 190, ¶ 31 (8th Dist.), quoting *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir.1997), quoting *United States v. Gann*, 732 F.2d 714, 722 (9th Cir.1984). When an affidavit "indicates investigation into an ongoing criminal operation, such as drug trafficking, [it] may support the issuance of a search warrant even where the information provided in the affidavit is not recent." *State v. Morales,* 2018-Ohio-3687, 118 N.E.3d 1183, ¶ 21-24 (10th Dist.) (holding that a one-month delay between drug activity recounted in an affidavit and application for a warrant did not demand reversal), citing *United States v. Ortiz*, 143 F.3d 728, 733 (2d Cir.1998). However, this principle is not boundless: as the Sixth Circuit recognized, "[i]n the context of drug crimes, information goes stale very quickly 'because drugs are usually sold and consumed in a prompt fashion.' " *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir.2010), quoting *United*

*States v. Frechette*, 583 F.3d 374, 378 (6th Cir.2009); *see United States v. Abernathy*, 843 F.3d 243, 250 (6th Cir.2016).

{¶15} Here, the Butler County information reflected evidence that was, at best, 17 months old. Several key pieces of information, including the traffic stop referenced by the dissent, stretch back even further. Our sister courts have rejected "fresher" evidence in analogous circumstances. *See State v. Gales,* 143 Ohio App.3d 55, 62, 757 N.E.2d 390 (8th Dist.2001) ("Given the perishable nature of the contraband at issue, there is no reason to believe that one might find heroin at the address three months after this alleged admission and single, isolated surveillance[,] * * * probable cause has grown stale."); *Goble,* 2014-Ohio-3967, 20 N.E.3d 280, at ¶ 11 (finding evidence "nearly three years" old "too stale to have been of value in making a probable cause determination"). The state identifies no cases upholding a comparable, years-long delay between the collection of evidence and execution of a warrant in a drug trafficking case, nor are we aware of any such precedent elsewhere in Ohio. Without some compelling authority, we see no reason to extend the shelf life of "stale" evidence so far beyond the bounds established by other Ohio courts.

{¶16} Of course, old information is not always stale information. We agree with the state's general proposition that when present evidence corroborates past behavior, information that might otherwise be deemed stale may be "refreshed" to help establish probable cause. *See State v. Ingold*, 10th Dist. Franklin No. 07AP-648, 2008-Ohio-2303, ¶ 35 (" 'Where recent information corroborates otherwise stale information, probable cause may be found.' "), quoting *United States v. Spikes,* 158 F.3d 913, 924 (6th Cir.1998). This principle flows inexorably from our well-established precedent that the staleness of evidence depends on the circumstances of

each case. *See German,* 1st Dist. Hamilton No. C-040263, 2005-Ohio-527, at ¶ 17. The trouble is that, in this case, no such corroboration ever emerged. Between January of 2017 (when the Butler County investigation concluded) and June of 2018 (when the trash pull occurred), the state adduced no evidence that connected Ms. Martin or Mr. Stonitsch with drug trafficking. The slim contents of the trash pull were all consistent with personal drug use; they did not suggest resumption of an "ongoing criminal operation." *See Morales,* 2018-Ohio-3687, 118 N.E.3d 1183, at ¶ 21.[1] Present corroboration *can* prevent old evidence from being stale—but this case simply does not reveal any such substantiation.

{¶17} Exacerbating the age of the Butler County evidence is the fact that it implicated an entirely different residence than the one that the Hamilton County detective sought to search. Such situations defy the basic parameters of establishing probable cause, which require the affidavit to demonstrate that "evidence is likely to be found *at the place to be searched.*" (Emphasis added.) *German,* 1st Dist. Hamilton No. C-040263, 2005-Ohio-527, at ¶ 13. *See Wallace,* 6th Dist. Wood No. WD-19-080, 2020-Ohio-4168, at ¶ 26. Evidence of drug trafficking in Butler County could not be "still on the premises" in Hamilton County years later. (Internal citations omitted.) *Rieves,* 2018-Ohio-955, 109 N.E.3d 190, at ¶ 31. And in the 17-month gap between the conclusion of the Butler County investigation in January

---

[1] We note that the dissent emphasizes the presence of vacuum-sealed bags in Ms. Martin's trash, characterizing these bags as "unlikely to be a package for personal use." But the detective conceded the bags he found "could be" signs of personal use, and he described them as "Ziploc" bags that might have been purchased "anywhere," including a local Target or Kroger. The affidavit never explains how many vacuum-sealed bags were found or their sizes (contrasting, again, with the Butler County information that described the size of the bags at issue there).

2017 and the trash pull in June 2018, police observed no evidence that Ms. Martin engaged in drug-related activities at her Hamilton County residence.

**{¶18}** Finding the Butler County evidence stale, we must remove it from our consideration and evaluate probable cause based on what remains: the trash pull. *See State v. Weimer*, 8th District Cuyahoga No. 92094, 2009-Ohio-4983, ¶ 30 ("[W]e are unable to read the affidavit in its entirety because the law requires that we excise its offending portions."); *Goble,* 2014-Ohio-3967, 20 N.E.3d 280, at ¶ 11-13 (declining to consider portions of the affidavit as either "too stale" or "lack[ing] any indicia of reliability," then reviewing probable cause on the "sole basis" of remaining trash pull evidence); *Abernathy,* 843 F.3d at 250 ("We do not consider 'recklessly and materially false statements' * * * [n]or do we consider 'stale' information."); *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir.2009) ("[S]tale information cannot be used in a probable cause determination.").

**{¶19}** The state concedes that the Butler County evidence, standing alone, was too stale to establish probable cause. But it urges us to consider the evidence anyway (similar to the dissent's view) as "corroborat[ing] * * * background information" within the meaning of *State v. Jones,* 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 1. We respectfully disagree with this reading of *Jones.* In that case, the Ohio Supreme Court held that "evidence seized from a single trash pull that corroborates tips and background information involving drug activity is sufficient to establish probable cause for a warrant." *Id.* Specifically, it found that the Eighth District erred in its decision to view trash-pull evidence in isolation where the officer's affidavit also contained other "information linking the address to methamphetamine production and distribution from multiple sources." *Id.* at ¶ 18.

Staleness of evidence was not at issue in *Jones*. No party argued that the "background information" in *Jones* was stale, misleading, or otherwise improper. Instead, the question concerned whether trash pulls should "per se be viewed in isolation when determining probable cause." *Id.* at ¶ 15. The answer was a resounding "no," because "reviewing courts must examine the totality of the circumstances" when evaluating probable cause. *Id.* at ¶ 13.

{¶20} But the *Jones* court did not address the removal of stale evidence from an officer's affidavit, and we do not view the decision as implicitly overturning the long-standing rule that "stale information cannot be used in a probable cause determination." *Frechette*, 583 F.3d at 377. *See, e.g., Weimer* at ¶ 30; *Goble* at ¶ 11-13; *Abernathy* at 250. The fact that a trash pull is not *per se* viewed in isolation does not mean that a trash pull should *never* be viewed in isolation. We assess affidavits involving trash-pull evidence under the same totality-of-the-circumstances test that we apply to any affidavit: we will consider background information that is properly included in the affidavit, and we will not consider background information that is "recklessly and materially false" or "stale and unreliable." *Abernathy* at 249-251.

{¶21} The Eighth District's decision in *State v. Weimer*—discussed at length by the Ohio Supreme Court in *Jones*—is instructive. In that case, as here, police learned about the defendant's prior criminal investigation in another town. *Weimer,* 8th District Cuyahoga No. 92094, 2009-Ohio-4983, at ¶ 5. Officers admitted that their surveillance of the defendant's new residence was "limited" and that they "didn't do anything for several months." *Id.* Roughly a year after learning of the prior investigation, police conducted a trash pull, which revealed evidence of personal drug use: "two large plastic zip lock bags, two smaller sandwich-sized zip

11

lock bags, and a metal spoon, all of which tested positive for cocaine." *Id.* at ¶ 6. Two days after the trash pull, the *Weimer* detective presented an affidavit to a municipal court judge, but omitted key facts about the subjects of the investigation and his own knowledge of contradictory information. *Id.* at ¶ 7, 31.

{¶22} On appeal, the Eighth District upheld the trial court's decision to grant the defendant's motion to suppress. *Id.* at ¶ 49. It explained that it was "unable to read the affidavit in its entirety because the law requires that we excise its offending portions." *Id.* at ¶ 30. The *Weimer* court emphasized that "aside from conducting a one-time trash pull, the * * * police conducted no follow-up investigation, such as a controlled buy linking [the defendant] to the activity suspected in the warrant. In fact, the * * * police never observed [the defendant or his associate] engaging in any criminal activity, nor did they document any suspected criminal activity occurring in [the] home." *Id.* at ¶ 29. After removing the "offending portions" of the officer's affidavit, the *Weimer* court concluded that it failed to support a finding of probable cause, "even with the legal trash pull" evidence. *Id.* at ¶ 30. The Ohio Supreme Court later clarified that this holding existed in harmony with its *Jones* decision: the trash pull evidence in *Weimer* was properly "viewed in isolation because the other evidence cited in the affidavit seeking a warrant was fatally flawed." *Jones,* 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, at ¶ 15.

{¶23} We find that the 28 paragraphs of copy-pasted Butler County evidence, like the misleading information in *Weimer*, must be discounted as "stale" from our evaluation of probable cause. Without any link to the Butler County information, the remaining three paragraphs of trash-pull evidence cannot support probable cause for a search of Ms. Martin's residence. Ohio courts and the Sixth Circuit have repeatedly

held that evidence of personal drug use recovered from a trash pull is insufficient, standing alone, to establish probable cause. *See, e.g., Goble,* 2014-Ohio-3967, 20 N.E.3d 280, at ¶ 10, 16 (finding evidence of "several" marijuana stems and marijuana "roaches" in trash pull insufficient to establish probable cause); *State v. Kelly*, 8th Dist. Cuyahoga No. 91137, 2009-Ohio-957, ¶ 20 (finding clear plastic bag with "suspected marijuana residue" insufficient to support probable cause); *Abernathy,* 843 F.3d at 251 (holding that affidavit did not support probable cause where "the only proper evidence the [a]ffidavit contained * * * was the 'several' marijuana roaches and T2–laced plastic bags the police recovered from the trash pull"). "The waste products of marijuana use do not, of themselves, indicate any continuing presence of contraband in the home." *United States v. Elliott*, 576 F.Supp. 1579, 1581 (S.D.Ohio 1984).

{¶24} For all of the foregoing reasons, we agree with the trial court's conclusion that the detective's affidavit fell far below a showing of probable cause.

B.

{¶25} Although the trial court rejected a probable cause conclusion, it declined to apply the exclusionary rule, citing the good-faith exception. On appeal, Ms. Martin criticizes the court's invocation of the good-faith exception and invites us to reverse. For the reasons explained below, we agree and sustain her assignment of error.

{¶26} "The exclusionary rule is a judicially created remedy for Fourth Amendment violations," and whether to apply it poses a separate question from that of whether the Fourth Amendment was violated. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 92, citing *United States v. Calandra*, 414 U.S.

13

338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), and *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).  Its purpose is not to compensate the defendant whose rights have been infringed, but rather to deter police misconduct in future cases.  *Id.* at ¶ 96.  The suppression of evidence exacts a high cost on our criminal justice system, and no deterrence purpose is served " '[w]here the official action was pursued in complete good faith.' "  *State v. George,* 45 Ohio St.3d 325, 331, 544 N.E.2d 640 (1989), quoting *Leon* at 919.  Thus, "[w]hen police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant."  *Herring v. United States,* 555 U.S. 135, 142, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), quoting *Leon* at 922.

{¶27}  Like any storied exception in the law, the good-faith exception carries its own exceptions-to-the-exception, each tailored to reflect the deterrence rationale described above.  We will not apply the good-faith exception (and will apply the exclusionary rule) in any of the four following scenarios:

    (1) the magistrate or judge has been misled by false information that the affiant knew or should have known was false;

    (2) the issuing magistrate or judge has abandoned the judicial role;

    (3) the police have relied on a warrant based on an affidavit so lacking indicia of probable cause that no official could reasonably believe in its existence; or

    (4) the warrant is so fatally deficient that the officers executing it cannot reasonably presume that it is valid.

*State v. Hampton*, 1st Dist. Hamilton No. C-0801787, 2008-Ohio-6088, ¶ 19. *See George,* 45 Ohio St.3d at 331, 544 N.E.2d 640; *Leon* at 923. The key question in this case arises under the third scenario: whether a reasonably well-trained officer would have known that the information contained in this affidavit was too stale (or, in the case of the trash pull, simply insufficient) to support issuance of a warrant. Ms. Martin maintains, and we agree, that the answer is yes.

{¶28} When assessing police reliance on an affidavit, "a court should consider the total circumstances and assume that the executing officers have a 'reasonable knowledge of what the law prohibits.' " *Castagnola* at ¶ 93, quoting *Leon* at 919, fn. 20. *See Gales,* 143 Ohio App.3d at 63, 757 N.E.2d 390 (stating that courts should "presume[] that the officer who claims good-faith reliance has a certain minimum level of knowledge of what the law requires"). Police are not expected to anticipate shifts in the law, or to interpret conflicting precedent. *See State v. Johnson*, 141 Ohio St.3d 136, 2014-Ohio-5021, 22 N.E.3d 1061, ¶ 45 (holding that where existing case law supported officer's conduct, officer could not be expected to anticipate forthcoming, contrary United States Supreme Court ruling); *State v. Eads*, 2020-Ohio-2805, 154 N.E.3d 538, ¶ 39 (1st Dist.) (stating that officers may rely on "statute or binding precedent, even if the statute or precedent were later held unconstitutional or overruled."). However, once courts announce a legal rule, officers may no longer claim the good-faith exception for violations of that rule. *See Johnson* at ¶ 43 ("In the aftermath of *Jones*, police officers can no longer harbor a good-faith belief that attaching a GPS tracking device to a vehicle is not a search for purposes of the Fourth Amendment."). "[N]ow that the police are on notice" that a

particular type of evidence is insufficient to show probable cause, "the good-faith exception will not apply in the future." *Hampton* at ¶ 22.

{¶29} Two principles of Fourth Amendment jurisprudence converge here: (1) the need for a present showing of probable cause (i.e., staleness of evidence); and (2) the insufficiency of trash pull evidence consistent with personal use, standing alone, to establish probable cause. As applied to the facts of this case, neither presents a new or ambiguous issue of law. The United States Supreme Court held nearly a century ago that an affidavit must contain "proof * * * of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause *at that time*." (Emphasis added.) *Sgro*, 287 U.S. at 210, 53 S.Ct. 138, 77 L.Ed. 260. A reasonably well-trained officer should have known that information obtained from a drug-trafficking investigation in another county—conducted 17 to 33 months ago and concerning a different residence—was too stale to justify issuance of a warrant for a new residence without meaningful, present corroboration. *See Gales,* 143 Ohio App.3d at 63, 757 N.E.2d 390 (holding that "official belief in the existence of probable cause [was] entirely unreasonable" because "[n]othing within the four corners of the affidavit, closely related to the time of the issuance of the warrant, showed a fair probability that heroin would be found at [the residence]"). Likewise, a reasonably well-trained officer should have known that a marijuana cigar, some marijuana leaves, two straws, and a couple of plastic bags—left on the curb and accessible to the public for an unknown amount of time—were insufficient to establish probable cause on their own. *See Weimer,* 8th District Cuyahoga No. 92094, 2009-Ohio-4983, at ¶ 25, 26; *Goble,* 2014-Ohio-3967, 20 N.E.3d 280, at

16

¶ 16-18; *Kelly,* 8th Dist. Cuyahoga No. 91137, 2009-Ohio-957, at ¶ 27; *Abernathy,* 843 F.3d at 251-52; *Elliot,* 576 F.Supp. at 1581.

{**¶30**} The state urges that even if the Hamilton County detective was mistaken about the existence of probable cause to search Ms. Martin's residence, no deterrence value exists in excluding the evidence of his search. We disagree. The exclusionary rule is properly applied when an officer " 'could not have harbored an objectively reasonable belief in the existence of probable cause.' " *State v. Dibble,* 159 Ohio St.3d 322, 2020-Ohio-546, 150 N.E.3d 912, ¶ 16, quoting *Leon*, 468 U.S. at 926, 104 S.Ct. 3405, 82 L.Ed.2d 677. If the officer knows (or should know) that the affidavit cannot support probable cause, then he or she cannot circumvent the Fourth Amendment by willfully ignoring the magistrate's error in issuing the warrant. *Id.* at ¶ 18 (holding that evidence should be suppressed if " ' "officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment" ' "), quoting *Leon* at 919, quoting *United States v. Peltier*, 422 U.S. 531, 542, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975).

{**¶31**} The state here opted to forgo the types of investigative practices and techniques—employed so successfully in Butler County years ago—that could have yielded *present* probable cause. *See Davis v. United States*, 564 U.S. 229, 238, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) ("When the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs."). Ohio case law provides myriad examples of how the old Butler County information might have been "refreshed" by present corroboration. Surveillance of the Hamilton County residence might have revealed a pattern of activity consistent with trafficking. *See,*

17

*e.g., State v. Pillar,* 8th Dist. Cuyahoga No. 84566, 2005-Ohio-630, ¶ 7 (holding that six weeks of surveillance and multiple citizen complaints corroborated evidence from trash pull). A controlled buy or tip from an informant might have confirmed the detective's suspicion that Mr. Stonitsch and Ms. Martin were reverting to old habits. *See, e.g., Morales,* 2018-Ohio-3687, 118 N.E.3d 1183, at ¶ 23 (holding that one-month-old information on drug investigation was allowable, in part, because it was corroborated by two controlled buys, tips, and surveillance.); *Kelly,* 8th Dist. Cuyahoga No. 91137, 2009-Ohio-957, at ¶ 27 (upholding trial court's grant of motion to suppress where "[p]olice did not conduct surveillance or a controlled buy"). Evidence that Mr. Stonitsch had resumed his trips to Michigan dispensaries, for example, could suggest the existence of an ongoing criminal operation: a totally different "character of [] crime" that might alter the staleness inquiry altogether. *See German,* 1st Dist. Hamilton No. C-040263, 2005-Ohio-527, at ¶ 17; *Morales* at ¶ 21. Even a second or third trash pull might have produced evidence of trafficking inconsistent with personal drug use, which would bolster the case for probable cause. *See Rieves,* 2018-Ohio-955, 109 N.E.3d 190, at ¶ 29 (finding probable cause where trash pull produced evidence of 11 plastic bag "tear offs" and officer's affidavit explained why "[a] person using or consuming drugs would never have possession of the 'tear off' portion of the bag.").

{¶32} But no such additional investigation took place here. Instead, the Hamilton County detective conducted a single trash pull. *See Kelly*, 8th Dist. Cuyahoga No. 91137, 2009-Ohio-957, at ¶ 27 (citing the officer's decision not to conduct surveillance, a controlled buy, or follow-up testing as "fail[ing] to demonstrate good faith * * * in obtaining the search warrant"). *Goble,* 2014-Ohio-

18

3967, 20 N.E.3d 280, at ¶ 14 (faulting "the police department's failure to conduct any follow-up investigation, surveillance, or a controlled drug buy," along with its decision not to test "results of the trash-pull," in another case). The Hamilton County detective's justification of his actions at the hearing on the motion to suppress certainly raises concerns:

> Old Information? The information based on the date, without the totality of everything? We were able to freshen up that information **because clearly the investigation turned out that it was good information and the behavior continued.**

*See Castagnola,* 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, at ¶ 101 (referencing officer's testimony at the motion to suppress hearing as evidence that he relied on improper suspicions and assumptions to support probable cause). It is axiomatic Fourth Amendment jurisprudence that the end cannot justify the means. *See, e.g., Castagnola* at ¶ 104 (" 'There is always a temptation in criminal cases to let the end justify the means, but as guardians of the Constitution, we must resist that temptation.' "), quoting *State v. Gardner*, 135 Ohio St.3d 99, 2012-Ohio-5683, 984 N.E.2d 1025, ¶ 24.

{¶33} The trial court concluded that the good-faith exception should be applied in this case because "it was up to the judge * * * to determine whether the evidence met the standard of probable cause." This statement is generally true, but missing an important qualifier: a police officer is entitled to rely on a judicial determination of probable cause *so long as* one of the four exceptions to the good-faith exception does not apply. *See George,* 45 Ohio St.3d at 331, 544 N.E.2d 640, citing *Leon,* 468 U.S. at 923, 104 S.Ct. 3405, 82 L.Ed.2d 677; *Castagnola*, 145 Ohio

St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, at ¶ 93, quoting *Leon*, 468 U.S. at 922, 104 S.Ct. 3405, 82 L.Ed.2d 677, fn. 20.

{¶34} Where, as here, a warrant is issued based on an affidavit manifestly lacking in probable cause, a reasonably well-trained officer should know better than to execute it. *Castagnola* at ¶ 98 (Internal quotation marks omitted.) ("Suppression remains an appropriate remedy * * * when an officer relies on a warrant that is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."). We therefore find that the good-faith exception should not have been applied in this case, and that Ms. Martin's motion to suppress should have been granted.

* * *

{¶35} For all of the foregoing reasons, we sustain Ms. Martin's assignment of error and reverse the trial court's judgment denying her motion to suppress. Her convictions are vacated and the cause remanded to the trial court with instructions that her motion to suppress be granted.

Judgment reversed, convictions vacated, and cause remanded.

**HENDON, J**., concurs.
**MYERS, J**., dissents.


**MYERS, J**., dissenting.

{¶36} This case, unlike so many others that come before us, involves not a warrantless search, but a search following a determination of probable cause by an independent judge. There is no evidence that the officer seeking the warrant hid anything from the judge, left any key information out of the affidavit, was deceptive, or in any way misled the judge as to what the facts were. Because I would hold that

the trial court correctly applied the facts to the law in finding that the good-faith exception applied to the exclusionary rule, I respectfully dissent.

{¶37} As does the majority, I will start with a discussion of probable cause. I do not find this issue to be as simple as the majority deems it to be, when considering all the facts available at the time and considering them in their totality, and not in separate silos.

### Probable Cause

{¶38} I agree with the majority in its setting forth the fundamental principles of Fourth Amendment law and probable cause. As recognized by the majority, an affidavit must contain sufficient information to allow the issuing judge to conclude that evidence is likely to be found at the place to be searched. And, that information cannot be so stale as to make it unlikely that the contraband will be found there. It must be so closely related in time to justify a finding of probable cause at that time.

{¶39} I also agree that evidence from a single trash pull showing personal use of drugs is insufficient, without more, to establish probable cause. But I disagree with the majority that this is what we have in this case.

{¶40} Before I turn to an analysis of the case law, I think it is important to set forth what facts were before the independent judge at the time he issued the warrant. Martin and her codefendant boyfriend were the subjects of an investigation in Butler County involving interstate trafficking in marijuana and hashish. That information, admittedly over a year old, culminated in an arrest and conviction of Martin's live-in boyfriend. The Butler County officer contacted Colerain Township upon learning that the two had moved to Hamilton County. The Colerain officer took this

information and did some limited surveillance of the property, confirming Martin and her boyfriend lived there.

{¶41} The Colerain officer then conducted a legal "trash pull" at the location. He found, among other things, items that lead him to believe Martin and her boyfriend were still engaged in drug-trafficking activities. This included "multiple vacuum sealed plastic bags and additional tops of vacuum sealed plastic bags" (which he later testified smelled of marijuana), "loose marijuana," and two cut straws, one having white powder residue.

{¶42} What else did the officer know? He knew that since the Butler County warrant had been issued, Martin's boyfriend had been convicted of attempted trafficking in marijuana in February of 2018, just a few months before he applied for the warrant. He also knew from running a Bureau of Criminal Investigation report that Martin's boyfriend, who lived in the house to be searched, had felony drug-trafficking and possession charges. He also knew that in January 2017, the boyfriend admitted to police that he planned to drive to Michigan to pick up 60 pounds of marijuana. And, as reflected in the information received from Butler County and contained in the affidavit, he knew that Martin's boyfriend had prior drug charges that he pled down in previous cases.

{¶43} The Colerain officer also knew that Martin's boyfriend had been caught during a traffic stop in Butler County in July of 2016 with an "empty vacuum sealed bag containing marijuana residue" along with the words "12 ounces plus one gram Super Lemon." The affidavit identified "Super Lemon" as "a strain of high grade marijuana."

22

{¶44} Finally, the officer knew from the 30-plus paragraphs of detailed information he received from the Butler County warrant affidavit that Martin's boyfriend had previously been engaged in interstate transportation and trafficking of high grade marijuana and hashish.

{¶45} Armed with this information, the Colerain officer sought a warrant to search the residence for evidence of drug trafficking and possession. He included in the affidavit a recitation of the entire Butler County affidavit. (I note that the majority seems to criticize him for cutting and pasting, but what better way to accurately portray the substantial and detailed information?) In addition to this older, and I agree standing alone "stale," information, he included the result of his surveillance, the trash pull, and the recent conviction for attempted trafficking in marijuana.

{¶46} An independent judge reviewed the totality of the information and found probable cause to issue the warrant. The trial court found that there was not probable cause to issue the warrant, and based on the appeal in front of us, we need not decide whether this was a correct decision. We do need to decide whether the Colerain officer acted in good faith in relying on the warrant. More on that to follow after a brief discussion of the law with respect to probable cause and a trash pull.

{¶47} I agree with the majority that *State v. Jones* from the Supreme Court of Ohio is the seminal and binding case in Ohio regarding single trash pulls. I disagree with the application of that case here.

{¶48} In *Jones*, an affidavit in support of an application for a search warrant of a house set forth detailed information about a trash pull there, which provided evidence of methamphetamine production, items containing residue of the drug, and

23

mail addressed to the defendant. *Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, at ¶ 16. The affidavit noted that the defendant matched the description of a person with the same first name, who had been identified by a confidential informant as a producer and seller of methamphetamine. *Id.* The affidavit also associated the defendant with another woman who was linked to the production of methamphetamine by six persons arrested for meth-related crimes, two of whom stated the operation was based at the defendant's house. *Id.* The affidavit stated that a man arrested at that house a few months earlier was a known buyer of pseudoephedrine, an ingredient of methamphetamine, and items testing positive for methamphetamine were found on his person when he was arrested. *Id.*

{¶49} The trial court granted the motion to suppress, viewing the trash pull in isolation pursuant to the Eighth District's decision in *State v. Weimer*, 8th Dist. Cuyahoga No. 92094, 2009-Ohio-4983. *Jones* at ¶ 8. On appeal, the Eighth District affirmed. *Id.* at ¶ 9. The state appealed, and the Supreme Court reversed. *Id.* at ¶ 10, 19.

{¶50} The Supreme Court held that courts should use a totality-of-the-circumstances test to determine whether probable cause exists to issue a search warrant if the supporting affidavit relies in part on evidence seized from a trash pull. *Id.* at ¶ 1. The court held that evidence seized from a single trash pull that corroborates tips and background information involving drug activity is sufficient to establish probable cause for a warrant. *Id.*

{¶51} In finding no probable cause in this case, the majority finds that the stale information would not support probable cause. I would agree with that determination if that is all we had in this case. Then, the majority says that ignoring

the stale information, the evidence from the single trash pull was insufficient to establish probable cause. But that is not what *Jones* instructs us to do. As held in *Jones*, evidence seized from a single trash pull that corroborates tips and background information involving drug activity is sufficient to establish probable cause for a warrant. *Id.* at ¶ 1. I would find that the evidence found in the trash pull corroborates the background information received from Butler County. Here we have neither JUST stale evidence, nor JUST a single trash pull. And, the evidence from the trash pull also resulted in an unusual find—not just baggies or zip-locks, but vacuum-sealed bags. These same types of bags were found on Martin's boyfriend when he was stopped in Butler County.

{¶52} The issuing judge could also have found that the trash pull included not just evidence of personal use, but also evidence of trafficking. First, the bags were vacuum-sealed bags, which seems unlikely to be a package for personal use. And the affidavit noted they were consistent with drug trafficking. Second, the bags smelled of marijuana.

{¶53} As the Supreme Court of Ohio emphasized in *Jones*:

In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

{¶54} *Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, at ¶ 14, quoting *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus.

{¶55} Again, I raise these issues not to decide the issue of whether the trial court was correct in concluding there was no probable cause, but rather to point out that I do not think this conclusion is as clear cut as the majority finds it to be. And if an issuing judge found probable cause on these facts, and if that determination is supportable, as I suggest it might be, then how can we find that the officer (who disclosed everything to the judge, made clear that some of the information was old, hid nothing, made no attempt to deceive) "relied on a warrant based on an affidavit so lacking in indicia of probable cause that no official could reasonably believe in its existence?" I suggest we cannot make this finding.

### Good-Faith Exception

{¶56} The majority has correctly set forth the test for application of the good-faith exception to the exclusionary rule. I agree that officers are presumed to know the law that governs their conduct under the Fourth Amendment. And I agree that this includes not relying on stale information, and not relying on a single trash pull that shows evidence only of personal use. But as discussed above, that is not what we have here. We have old information of drug trafficking, new information of a single trash pull with evidence supportive of drug trafficking and evidence that corroborates the background older information, a recent drug conviction, and evidence of similar unique packaging.

{¶57} Was this affidavit so lacking in an indicia of probable cause that no reasonable officer would have relied on the warrant? Could someone say that based upon the totality of the information, it would be more likely than not that evidence of marijuana trafficking would be found in this home? An "indicia" of probable cause solely requires some "evidence," "sign," or "indication" of probable cause. *Black's*

*Law Dictionary* (11th Ed.2019). *See George*, 45 Ohio St.3d at 331-332, 544 N.E.2d 640 (a warrant approved by a judge which describes a growing marijuana plant in an enclosed residential yard and authorizes a search of the residence, yard, and outbuildings was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable); *State v. Scott*, 3d Dist. Marion No. 9-20-05, 2020-Ohio-5575, ¶ 62 (good-faith exception applies regardless of whether the information in the affidavits is otherwise too stale to support findings of probable cause because each of the affidavits contains information, collected over many years, that connected the defendant to a fairly large-scale, longstanding marijuana growing operation); *State v. Akers*, 12th Dist. Butler No. CA2007-07-163, 2008-Ohio-4164, ¶ 29 (presence of marijuana remains in a sandwich bag and a piece of junk mail addressed to the home's resident obtained from the trash pull at defendant's home was sufficient to demonstrate that the officers were acting in objectively reasonable reliance on the search warrant).

**{¶58}** The fact that the officer could have done more is not an issue we decide. Of course he could have. The issue is whether the evidence should be excluded because no reasonable police officer could believe an indicia of probable cause existed. And that is where I diverge from the majority. I do not think that a reasonable officer would find the affidavit to be so lacking in an indicia of probable cause as to believe no probable cause existed. Again, one judge found there was probable cause, one judge found there was not, and this judge suggests that there is at least an argument that there is probable cause after examining the law and the facts. We should not hold the officer to a higher standard.

27

**{¶59}** Therefore, I would affirm the trial court's finding that the good-faith exception to the exclusionary rule applies.

SYLVIA SIEVE HENDON, retired, from the First Appellate District, sitting by assignment.

Please note:

The court has recorded its entry on the date of the release of this opinion